778 So.2d 636 (2001)
STATE of Louisiana
v.
David CAMPBELL.
No. 99-KA-0892.
Court of Appeal of Louisiana, Fourth Circuit.
January 3, 2001.
*639 Harry F. Connick, District Attorney, Jane L. Beebe, Assistant District Attorney, New Orleans, Counsel for Plaintiff-Appellee.
Sherry Watters, Louisiana Appellate Project, New Orleans, Counsel for Defendant-Appellant.
(Court composed of Judge WILLIAM H. BYRNES, III, Judge STEVEN R. PLOTKIN Judge DENNIS R. BAGNERIS, Sr.).
BAGNERIS, Judge.
On April 15, 1997, a bill of information was filed charging the defendant, David Campbell, with one count of possession of cocaine with intent to distribute and one count of possession of a dangerous weapon by a convicted felon.[1] The defendant was arraigned and pled not guilty on May 9, 1997. Following a hearing on May 29, 1997, the trial court found probable cause and denied the defendant's motions to suppress evidence and statement. Defendant's original trial counsel withdrew from the case on June 4, 1997, and the court appointed the Orleans Indigent Defenders Program to represent the defendant.
Prior to the trial of the case on October 29, 1997, defense counsel orally requested a continuance. The trial court denied the motion to continue. The trial court then granted the State's oral motion to sever the trial of the possession of a dangerous weapon charge from the trial of the possession with intent to distribute cocaine charge. Trial of the possession of cocaine with intent to distribute charge proceeded, and the twelve-member jury found the defendant guilty as charged.
On January 22, 1998, the State amended the possession of a dangerous weapon charge to attempted possession of a dangerous weapon. The defendant pled guilty as charged to the amended charge and was sentenced to nine months in the custody of the Department of Corrections, with credit for time served.[2] The trial court ordered the sentence to be served concurrently with sentences for three other cases, including the possession with intent to distribute cocaine charge. On January 22, 1998, the defendant was also sentenced to serve five years for the possession of cocaine with intent to distribute charge; the sentence was to run concurrently with his other three cases. Defense counsel filed a motion to reconsider sentence and a motion for appeal.
The State filed a multiple bill charging the defendant with being a second felony offender. The State averred that the defendant had pled guilty to manslaughter on March 31, 1983 in case # 292-115. Following a hearing on March 17, 1998, the defendant was adjudicated a second felony offender. He was sentenced to serve fifteen years in prison under the provisions of La. R.S. 15:529.1. The court ordered that the sentence run concurrently with any other sentence the defendant had to serve. On January 26, 1999 counsel filed a motion for appeal, and the court granted the defendant an out of time appeal.

STATEMENT OF FACTS
On January 3, 1997, at approximately 9:00 a.m., Detective Russell Nelson ("Detective Nelson") received a telephone call from a concerned citizen reporting possible drug dealings in the 1000 block of North Robertson. The concerned citizen, who lived in the area, stated that an African-American *640 male, wearing a black cap, black sweatshirt and black pants, and standing next to a black four-door Buick, with license plate # CDH-637, was dealing narcotics from the trunk of the vehicle.
Detective Nelson, along with his partner, Detective Arthur Powell ("Detective Powell"), traveled to the 1000 block of North Robertson Street. Immediately upon turning the corner, they observed the defendant closing the trunk of the vehicle. The defendant was wearing clothes that fit the description given over the hotline by the concerned citizen. The two detectives pulled up, identified themselves as police detectives, and informed the defendant that he was under investigation for selling narcotics. Detective Nelson then conducted a safety pat-down search and noticed a bulge in the defendant's right front pants pocket. Detective Nelson recovered ninety-three dollars in currency from the defendant. He also felt a bulge in the defendant's right rear pocket and removed a folding pocket knife with a three and a half-inch blade. Detective Nelson advised the defendant that he was under arrest for carrying a concealed weapon and, further advised him of his Miranda rights. At the suppression hearing Detective Nelson testified that when asked if he had anything to say, the defendant stated, "Y'all can search my car cause (sic) I don't have any drugs or narcotics"excuse me, "drugs or weapons in my vehicle at all." However, at trial, Officer Powell testified that Officer Nelson asked the defendant if they could search his car. Officer Powell's testimony conflicted with that of Officer Nelson. After the defendant allegedly gave permission to search his vehicle, the officers asked a second time if he was certain he wanted them to search his vehicle. He allegedly answered affirmatively, and they proceeded to search the vehicle. The officers did not obtain a written waiver of rights from the defendant. Detective Nelson stated that he did not go over a "Consent to Search Warrant" form with the defendant because he did not have any of those forms with him at the time.
While searching the defendant's vehicle, Detective Nelson discovered an envelope containing twelve hundred dollars under the floor mat. When asked to whom the money belonged, the defendant stated that it was for an attorney who was handling a case for him.
After retrieving the money, Detective Nelson opened the trunk of the vehicle. Inside the trunk, next to a fishing tackle box, Detective Nelson found two clear plastic bags containing a white powder, which the detective recognized as cocaine. Under the tackle box was a larger plastic bag containing thirty-one additional bags of powdered cocaine.
At trial, Detective Nelson admitted that he had no prior dealings with the concerned citizen who called that morning, and he had no opportunity to verify any previous information given to his office for accuracy. The caller did not give an exact address where the person selling drugs would be found; he merely described the clothing worn by the person selling narcotics in the 1000 block of North Robertson and the vehicle out of which the narcotics were being sold. Initially, Detective Nelson testified that when he and his partner drove up, the only person they saw on the street was the defendant. However, Detective Nelson later admitted that a woman was sitting on the porch where the defendant was located. Additionally, several people were also standing outside near a barroom on the corner. However, the detectives only questioned the defendant because he was the person they were looking for, i.e., he fit the description given by the caller.

ERRORS PATENT
A review of the record for errors patent reveals three.
First, the bill of information was defective insofar as count two is concerned. In State v. Ordon, 96-1710 (La.App. 4 Cir. 7/16/97), 697 So.2d 1074, writ denied, 97-2130 *641 (La.1/9/98), 705 So.2d 1099, this court concluded that a bill of information containing the same language found in count two of the bill of information filed was defective. The bill of information in State v. Ordon, supra, charged that the defendant possessed a dangerous weapon, i.e., a knife, having been previously convicted of an enumerated felony. This Court noted that La. R.S. 14:95.1 contains two possible methods of committing the offense. If a person has been convicted of certain enumerated felonies, he violates La. R.S. 14:95.1 if he (1) possesses a firearm or (2) carries a concealed weapon. This Court noted that the bill of information charged that the defendant "possessed a dangerous weapon, to wit: a KNIFE," having been previously convicted of an enumerated felony." The bill of information made no mention of the essential element that the knife was concealed by the defendant. Accordingly, this Court concluded the bill of information was defective because it failed to charge a crime punishable by a valid statute.
Similarly, in the instant case, the bill of information dated January 3, 1997, indicates the following as to count 2 of the bill of information:
"possessed been previously convicted of a felony, namely: Manslaughter in case # 292-115 `A', Criminal District Court, Parish of Orleans".
Count 2 was amended by the Assistant District Attorney on January 22, 1998 to a violation of La. R.S. 14:(27) 95.1, Attempted Possession of Firearm or Carrying Concealed Weapon by a Person Convicted of Certain Felonies. Because the bill of information failed to aver that the knife was concealed, it is defective.
In contrast, in State v. Ordon, this court found that the defendant and his counsel were adequately apprised that he was charged with and subsequently tried for carrying a concealed weapon. Because the record clearly reflected that the defendant was convicted for carrying a concealed weapon by a convicted felon, this court found that the defective bill of information did not require reversal of the defendant's conviction.
Second, in the instant case, the record clearly demonstrates that the defendant and/or his counsel were not cognizant of the nature of the charges when he pled guilty on January 22, 1998. The trial court, in accepting the defendant's guilty plea at the hearing on January 22, 1998, erroneously stated that the defendant was charged with being a felon with a firearm in case # 389-029 and case # 386-334. Additionally, the trial court noted that the charge in case # 386-334 would be amended by the District Attorney's Office to a violation of 14:(27)95.1, "an attempt felon with a firearm".
Prior to sentencing the defendant, the trial court stated that the "maximum sentence on an attempted felon in possession of a firearm is five years in the Department of Corrections." The trial court then asked the defendant if he understood that this was the maximum sentence that the court could give the defendant. Defense counsel then corrected the trial court and noted that the correct maximum sentence was seven and a half years. The trial court then informed the defendant of the correct maximum sentence. The trial court accepted the defendant's plea as to the three charged offenses and sentenced the defendant to 9 months in the Department of Corrections with credit for time served, rendering all sentences to run concurrently.
At no time during the Motions hearing, did the judge, the District Attorney or Defense counsel discuss the issue of concealment as an element of the offense. However, at the motion hearing of May 20, 1997, Detective Nelson testified that after finding the knife, he advised the defendant that he was under arrest for carrying a concealed weapon. Additionally, at trial, both detectives testified that the defendant was advised that he was being arrested for carrying a concealed weapon.
*642 After careful review of the record in its entirety, we find that the bill of information was defective, and the trial court erred in explaining to the defendant the charges against him. The combination of the defective bill of information and the erroneous statements created harmful error which created confusion for the defendant and his counsel. Thus, the defendant was not aware of the true nature of the charges against him and was prejudiced by the defective bill of information. Considering the defective bill of information and the erroneous statement given by the trial court, neither the defendant nor his counsel could give a valid plea as to the charged offenses in case # 389-029 (Attempted Felon in Possession of a Firearm), case # 386-334 (Attempted Felon in Possession of a Firearm), and case # 386-338 (Aggravated Battery). Accordingly, we set aside the defendant's plea in case # 389-029 (Attempted Felon in Possession of a Firearm), case # 386-334 (Attempted Felon in Possession of a Firearm), and case # 386-338 (Aggravated Battery).
Third, the trial court may have imposed an illegally lenient sentence upon the defendant. The defendant's adjudication as a multiple offender was based on the conviction for possession of cocaine with the intent to distribute, a violation of La. R.S. 40:967. Pursuant to La. R.S. 40:967(B)(4)(b) the first five years of any sentence for possession with intent to distribute cocaine must be served without benefit of parole, probation, or suspension of sentence. Yet, the trial court failed to specify that the first five years of the fifteen year multiple offender sentence was to be served without benefit of parole, probation, or suspension of sentence. Thus, the sentences are illegally lenient. However, we decline to correct errors favorable to the defendant which are not raised by the State or defense. State v. Fraser, 484 So.2d 122 (La.1986).
The defendant's contention is without merit.

ASSIGNMENT OF ERROR NUMBER 1
In the first assignment of error, the defendant argues that his right to compulsory process for obtaining crucial witnesses was violated when the trial court denied his motion for continuance.
The procedure for obtaining a continuance based upon the absence of a witness is specified in La.C.Cr.P. article 707 and La.C.Cr.P. art. 709.
La.C.Cr.P. article 707 provides:
A motion for continuance shall be in writing and shall allege specifically the grounds upon which it is based and, when made by a defendant, must be verified by his affidavit or that of his counsel. It shall be filed at least seven days prior to the commencement of trial. (Emphasis added).
Upon written motion at any time and after contradictory hearing, the court may grant a continuance, but only upon a showing that such motion is in the interest of justice.
Pursuant to the above article, the defendant's motion for continuance should have been in writing, and it should have been filed at least seven days prior to trial. However, the defendant failed to file a written motion for a continuance. Instead, counsel waited until the morning of trial to orally request a continuance.
An oral motion for a continuance is permitted when the occurrences that allegedly made a continuance necessary rose unexpectedly. State v. Brown, 95-0755 (La.App. 1 Cir. 6/28/96), 677 So.2d 1057. In the instant case, there is nothing in the record to support a finding that the grounds for the motion for continuance rose unexpectedly. Rather, in requesting the continuance defense counsel merely stated:
Your Honor, with regards to David Cambell's case, number 389-029, the Defense would request a continuance due to the fact that of the two witnesses that *643 were placed on the Defense witness list to be subpoenaed for today, one was left on the door after several attempts and the other one who (sic) was as (sic)two witnesses who were eye witnesses to thisto this arrest, no return whatsoever on the record.
Clearly, defense counsel's oral motion for continuance failed to comply with La. C.Cr.P. art. 709 which provides:
A motion for a continuance based upon the absence of a witness must state:
(1) Facts to which the absent witness is expected to testify, showing the materiality of the testimony and the necessity for the presence of the witness at the trial;
(2) Facts and circumstances showing a probability that the witness will be available at the time to which the trial is deferred; and
(3) Facts showing due diligence used in an effort to procure attendance of the witness.
Defense counsel failed to state what facts the missing witnesses would testify to or, failed to show they would be available at a future trial date, and/or failed to offer any proof of due diligence in attempts to procure the witnesses' attendance at trial. Rather, the sole basis for the defendant's continuance was that there was no proper return on the subpoenas for the two eyewitnesses.
This case is similar to State v. Borne, 96-1130 p. 7-8 (La.App. 4 Cir. 3/19/97), 691 So.2d 1281, writ denied, 97-1021 (La.10/3/97), 701 So.2d 197, certiorari denied, 523 U.S. 1009, 118 S.Ct. 1196, 140 L.Ed.2d 325 (1998). In Borne, defendant's oral motion to continue was based on his allegation that the clerk of court had failed to process his request to subpoena twenty-five witnesses. Other fact witnesses and the police officers testified at the trial. The defendant stated what the substance of some of his subpoenaed witnesses' testimony would be. However, the defendant could not provide the court with such information for all the witnesses he alleged were unavailable. Additionally, the defendant did not show that there was a probability that the witnesses would be available at the time to which the trial would have been deferred. The defendant also failed to show that due diligence was used in an effort to procure attendance of the witnesses. There was no evidence to show that the defendant had contacted some of the witnesses prior to trial to insure their availability. Under these circumstances, this court concluded that the defendant had not met his burden under La.C.Cr.P. art. 709. Consequently, the trial court had not abused its discretion when it denied the defendant's motion to continue.
In the instant case, the defendant refers to affidavits from the two subpoenaed witnesses that are contained in the record. While both affidavits contain information that may have been relevant if produced at trial, both affidavits are dated October 2, 1998, more than a year after the trial. The affidavits were apparently obtained and attached to an application for post conviction relief filed by the defendant in December of 1998. The address given for the two witnesses in the affidavit differs slightly from the address given on the subpoenas for trial. The basis for the different address is unknown. Further, it is not clear that one of the witnesses executing an affidavit was initially listed as a witness in the case. For this reason, it is not possible to say whether the testimony of the two witnesses would have created reasonable doubt of the defendant's guilt in the mind of a reasonable juror.
Admittedly, the right of a defendant to compulsory process is the right to demand subpoenas for witnesses and the right to have those subpoenas served. State v. Latin, 412 So.2d 1357, 1361 (La. 1982). This right is embodied in both the federal and state constitutions and in this state's statutory law. Id.; United States Constitution, Amendment 6; La. Const. Art. I, sec. 16 (1974); La.C.Cr.P. art. 731. *644 However, this right does not exist in a vacuum, and a defendant's inability to obtain service of requested subpoenas will not be grounds for reversal of his conviction or new trial in each and every case. In order for the defendant to show prejudicial error, he must demonstrate the testimony the witness might give which would be favorable to the defense and which would indicate the possibility of a different result if the witness were to testify. State v. Green, 448 So.2d 782 (La.App. 2 Cir. 1984). The defendant failed to make such a showing on this record.
A trial court's decision to deny or grant a continuance is within its broad discretion and will not be disturbed absent a clear showing of abuse. The decision turns on the circumstances of each case and should not be disturbed absent a showing of specific prejudice. La.C.Cr.P. art. 712; State v. Cockerham, 95-0172 La. App. 4 Cir. 3/14/96, 671 So.2d 967, writ denied, 96-1257 (La.10/25/96), 681 So.2d 363, habeas corpus granted, reversed on other grounds, 98-1018, 1999 WL 679673 (E.D.La.8/26/99)[3]; State v. Spradley, 97-2801 La.App. 1 Cir. 11/6/98, 722 So.2d 63, writ denied, 99-0125 (La.6/25/99), 745 So.2d 625. The facts of this case do not support a finding that the court abused its discretion in denying the oral motion to continue.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER 2
In the second assignment of error, the defendant argues that the trial court erred by denying his motion to suppress the evidence. We agree.
In the instant case, the officers admitted that they did not see the defendant engage in any type of behavior consistent with drug activity. Rather, they merely observed him closing the trunk of his car as they turned the corner. The defendant did not flee when they approached him; nor did the defendant exhibit any type of behavior to indicate he had a weapon. Notwithstanding these facts, the officers approached the defendant and immediately patted him down for weapons based solely on the anonymous tip received over the hotline.
A law enforcement officer may stop a person in a public place whom he reasonably believes is committing, has committed, or is about to commit an offense. La.C.Cr.P. Art. 215.1. "Reasonable suspicion" for an investigatory stop is something less than the probable cause required for an arrest, and the reviewing court must look to the facts and circumstances of each case to determine whether the detaining officer had sufficient articulable facts within his knowledge to justify an infringement of the suspect's rights. State v. Matthews, 94-2112 (La.App. 4 Cir. 4/26/95), 654 So.2d 868; State v. Vance, 93-1389 (La.App. 4 Cir. 2/25/94), 633 So.2d 819. In assessing the reasonableness of an investigatory stop, the court must balance the need to search and seize against the invasion of privacy the search and seizure entails. State v. Tucker, 626 So.2d 707 (La.1993); State v. Washington, 621 So.2d 114 (La.App. 2 Cir.1993), writ denied, 626 So.2d 1177 (La.1993). The totality of the circumstances must be considered in determining whether reasonable suspicion exists. State v. Belton, 441 So.2d 1195 (La.1983), cert. den., Belton v. Louisiana, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984). In reviewing the totality of circumstances, the officer's past experience, training and common sense may be considered in determining his inferences from the facts at hand were reasonable. State v. Jackson, 26,138 (La.App. 2 Cir. 8/17/94), 641 So.2d 1081.
The issue of what showing is necessary for a finding of reasonable suspicion for a stop in cases that involve tips from anonymous *645 informants has been addressed on numerous occasions.
The facts in State v. Mims, 98-2572 (La.App. 4 Cir. 9/22/99), 752 So.2d 192 were very similar to the facts of the instant case. In Mims police officers received information from a confidential informant that the defendant was dealing cocaine from a particular location. The informant described the clothing being worn by the defendant and further stated that the defendant had a brace on his left leg. The informant stated that the defendant concealed the drugs near the brace on his left leg and that the defendant limped as he walked. Approximately fifteen minutes after receiving this information, the officers observed the defendant in the vicinity wherein the informant stated he was dealing cocaine. The officers exited their vehicle, approached the defendant, and informed him that he was under investigation for possible narcotics violations. Following a pat-down search for safety reasons, crack cocaine was found near the defendant's left leg. Additional cocaine was retrieved from the left leg near his brace. The trial court denied the defendant's motion to suppress evidence. This court noted that no information was presented at the hearing regarding the informant's veracity, reliability, or basis of knowledge. Further, the officers did not observe any suspicious behavior on the part of the defendant that appeared to be drug related or that would establish that a pat down search for safety was required. Accordingly, this court reversed, finding that the evidence seized as a result of the pat down search was seized illegally.
Similarly, in State v. Creecy, 98-1472 (La.App. 4 Cir. 7/14/99), 742 So.2d 615, an unknown and untested informant informed police officers that the defendant was selling large quantities of marijuana from his residence. The factual basis for his knowledge of the drug sales was his own personal purchases of marijuana within the past seventy-two hours. The informant described the defendant, his attire, and his vehicle. The informant stated that the vehicle was parked near the front of the residence. A description of the vehicle included the license plate number. The officers set up surveillance. They observed the defendant's vehicle parked in the area, and they noted a prolific amount of pedestrian traffic going in and coming out of the alley on the right side of the residence. The officers observed the defendant coming out of the residence. Believing the investigation had been compromised, the officers decided to detain the defendant to prevent the possible destruction of evidence. The officers detained the defendant and advised him that he was under investigation for narcotics trafficking. They conducted a pat down search, and they recovered a bag of marijuana. Upon finding the marijuana, the officers obtained a search warrant for the defendant's residence and seized additional narcotics and weapons from the defendant's residence. The trial court denied the defendant's motion to suppress. This court reversed, finding that a bald allegation from an unknown and untested informant that the defendant sold him drugs was not sufficient to establish probable cause for the arrest of the defendant. Thus, the subsequent seizure of marijuana from the defendant's person and residence was illegal.
Likewise, in State v. Robertson, 97-2960 (La.10/20/98), 721 So.2d 1268, the Louisiana Supreme Court found no reasonable suspicion. In Robertson, the officers received an anonymous tip from a concerned citizen that "Will" was involved in drug sales in a specified housing project. The C.I. described "Will" and his car, which the C.I. stated, would be parked at a certain location when "Will" was not "dropping off narcotics." The officers went to that location and saw the described car. The officers then saw the defendant, who matched the description of "Will", drive the car from the targeted location. The officers followed him until he parked at another location. The officers approached *646 him and asked him his name. Upon being told he was William Robertson, the officers informed him he was under investigation for narcotics activity. The officers detained him and his car and called for a canine unit, which arrived approximately fifteen minutes later. The dog indicated the presence of narcotics in the car, and the officers searched the car and found a bag of cocaine under the ashtray. Upon review of the trial court's denial of the motion to suppress the evidence and this court's denial of writs from that refusal, the Supreme Court reversed, finding the corroboration of the "tip" did not give the officers reasonable suspicion to stop the defendant.
In State v. Sneed, 95-2326, (La.App. 4 Cir. 9/11/96), 680 So.2d 1237, the officers received a tip from an untested confidential informant concerning drug sales from a certain address by a named individual who was not the defendant. The officers confirmed that the named individual lived at the indicated address, that he had a lengthy arrest record, and that he was considered by both local and federal authorities as being currently involved in drugs. The officers set up a surveillance of the residence and soon saw the defendant, who was not the person named in the tip, arrive at the house. The defendant met with the named man at the front door of the house and then entered. The defendant remained inside for a short time and then left, driving to a nearby gas station. The officers blocked the defendant's car, informed the defendant he was under investigation for narcotics violations, and advised him of his rights. The defendant got "nervous", broke down, and told the officers that he knew what they were looking for and that it was under the back seat of the car. The officers searched the car and found contraband. On review, this court found there was no reasonable suspicion to support the stop of the defendant. This court noted that although the officers had received a tip concerning sales from the residence, there was nothing to tie the defendant to the residence, nor did the officers observe the defendant engage in any criminal activity. This court held that although "the residence was reasonably suspected as being used for narcotics transactions, Mr. Sneed's brief presence there, without more, was equally consistent with innocent behavior as with criminal conduct." Id. at p. 6, 680 So.2d at 1239.
The United States Supreme Court recently addressed the question of whether an anonymous tip that a described person was carrying a gun is, without more information, sufficient to justify a police officer's stop and frisk of that person. Florida v. J.L., 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000), is a case that, because of an almost identical fact pattern, applies directly to the instant case.
In Florida v. J.L., an anonymous caller reported to the police that a young black male standing at a particular bus stop and wearing a plaid shirt was carrying a gun. There was no audio recording of the tip, and nothing was known about the informant. Acting solely on the tip, two officers went to the bus stop about six minutes later and saw three black males "hanging out". One of the three was wearing a plaid shirt. The officers did not see a firearm, and the defendant, J.L., made no threatening or otherwise unusual movements. Apart from the tip from the anonymous caller, the officers had no reason to suspect any of the men of illegal conduct. Nonetheless, one of the officers approached J.L., frisked him, and seized a gun from his pocket. J.L. moved to suppress the gun as the fruit of an unlawful search, and the trial court granted his motion. The intermediate court reversed, but the Supreme Court of Florida quashed that decision and held that the search was invalid. The United States Supreme Court granted the state's petition for certiorari and later affirmed the Florida Supreme Court's reversal of the court of appeal.
*647 In affirming the decision of the Supreme Court of Florida, the U.S. Supreme Court held that the anonymous tip lacked sufficient indicia of reliability to establish reasonable suspicion for a Terry v. Ohio investigatory stop. In its reasoning, the Court noted that the officers' suspicion that J.L. was carrying a weapon arose not from any observations of their own, but solely from a call made from an unknown location by an unknown caller. The Court, citing Adams v. Williams, 407 U.S. 143, 146-147, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), noted that unlike a tip from a known informant whose reputation can be assessed and who can be held responsible if his allegations turn out to be fabricated, "an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity." The Court went on to state that there are situations in which an anonymous tip, suitably corroborated, exhibits "sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop." Id. The issue in this particular case, the Court argued, was whether the tip pointing to J.L. possessed those indicia of reliability. The Court concluded that the tip in that case lacked the moderate indicia of reliability. According to the Court, the anonymous call concerning J.L. provided no predictive information and therefore left the police without means to test the informant's knowledge or credibility. The Court found that the fact that the allegation about the gun turned out to be true was of no merit. The Court stated as follows:
"... That the allegation about the gun turned out to be correct does not suggest that the officers, prior to the frisks, had a reasonable basis for suspecting J.L. of engaging in unlawful conduct: The reasonableness of official suspicion must be measured by what the officers knew before they conducted their search. All the police had to go on in this case was the bare report of an unknown, unaccountable informant...." (Emphasis Supplied) Id. at 1379.
The State of Florida argued that the tip was reliable because its description of the suspect's visible attributes proved accurate. The Court disagreed with this argument:
An accurate description of a subject's readily observable location and appearance is of course reliable in this limited sense: It will help the police correctly identify the person whom the tipster means to accuse. Such a tip, however, does not show that the tipster has knowledge of concealed criminal activity. The reasonable suspicion here at issue requires that the tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person. (Emphasis Supplied). Id.

In the instant case, the officers candidly admitted that they knew nothing about the anonymous informer. Further, both officers admitted that neither observed any suspicious behavior on the part of the defendant consistent with drug trafficking: they did not see anybody approach the defendant; nor did they see any hand-to-hand transaction. In fact, when the particular officer who performed the pat-down search of the defendant was asked whether or not he saw any evidence of drug dealing, he unequivocally stated that he saw "None whatsoever." The officers both testified that they merely observed the defendant closing the trunk of his vehicle and standing on the sidewalk. Additionally, the officers testified that it was only a matter of seconds between their initial sighting of the defendant and their approaching of the defendant to let him know that he was under investigation. The subsequent pat-down of the defendant took place almost immediately after they approached him. Further, the officers testified that they failed to conduct any surveillance to determine whether or not the defendant was engaged in drug trafficking. Thus, the officers had no reasonable suspicion to stop and frisk the defendant pursuant to the law and jurisprudence. Accordingly, *648 the knife retrieved during this patdown was illegally seized.
The State argues that the cocaine seized from the vehicle was properly seized because the defendant gave his free and voluntary consent for the ensuing search of the vehicle. The State bears the burden of proving that the defendant freely and voluntarily gave his consent for a warrantless search. State v. Alexis, 514 So.2d 561 (La.App. 4 Cir.1987).
The testimony of the officers does not establish that the defendant's consent to the search of his vehicle was voluntary. In the instant case, the State presented no written proof to establish that the defendant freely consented to the search of his vehicle. In fact, when asked why the officers did not secure a written waiver to search, Officer Nelson stated that he did not have any of the forms with him at the time of the defendant's arrest. Further, it is unclear whether the defendant volunteered that the detectives could search his vehicle or whether Officer Nelson asked if they could search the vehicle. The testimony of the detectives differed on this issue. However, it is clear that the alleged permission to search came within seconds or minutes of the defendant being placed under arrest and taken into police custody.
In State v. Raheem, 464 So.2d 293 (La. 1985), the Louisiana Supreme Court found that the defendant's consent to search was not sufficiently attenuated from an illegal arrest to be considered voluntarily given. In Raheem, the defendant was illegally arrested and consented to search approximately forty minutes following her arrest. There were no intervening circumstances between her arrest and consent, and she was continually in the presence of police officers and the confines of a police station before she consented.
The facts of the instant case are suspect, as the consent to search was allegedly given immediately after the defendant was taken into custody. As noted earlier, a careful review of the record revealed that the police officers' testimony regarding whether or not the defendant voluntarily consented to a search of his vehicle was in conflict. However, assuming arguendo that the defendant did consent to the search of his vehicle, the defendant's consent after he had been arrested in violation of his constitutional rights still did not cancel the infringement upon his liberties. Because the officers had no probable cause to arrest the defendant, the subsequent "consent" to search his vehicle for weapons and contraband was thereby vitiated, as it was not sufficiently attenuated from the unlawful conduct to be a product of free will, considering the temporal proximity of the illegality and the consent, the lack of intervening circumstances, and the purpose and flagrancy of the misconduct. Accordingly, the fruits of the unlawful arrest should have been suppressed. State v. Raheem, 464 So.2d at 297; State v. Bennett, 383 So.2d 1236 (La. 1979) (on rehearing); see also Dunaway v. New York, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824. (1979); Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). The trial court erred in denying the defendant's motion to suppress.
This assignment of error has merit.

ASSIGNMENT OF ERROR NUMBER 3
In the third assignment of error, the defendant argues that the trial court erred by finding him to be a second felony offender. In this assignment of error the defendant argues that 1) the state failed to establish identity, and 2) the State failed to establish that the cleansing period had not expired.
Pursuant to the provisions of La. R.S.15:529.1(D)(b), the burden of challenging a predicate conviction in a multiple bill proceeding is on the defendant. The statute requires that a person wishing to challenge a conviction as invalid must file a written response to the bill of information. However, in the present case, the multiple *649 bill of information was filed the day after the hearing. Consequently, it was impossible for the defendant to file a written response to the bill. Moreover, as noted by the defendant, any written objection to the bill would have gone to the sufficiency of the State's evidence to prove the conviction. Because the defendant had no way of knowing what that evidence would be prior to the hearing, he had no way of knowing what objections to file. Accordingly, the defendant's general oral objections to the multiple bill are deemed sufficient to preserve the issues for appeal.
The defendant's argument that insufficient proof of identity was introduced is based on the fact that there are no fingerprints on the documents related to the prior conviction. We disagree. After review of the record, we find that Officer Vic Bono presented fingerprints from the arrest record for the 1983 manslaughter conviction and fingerprints from the arrest record for the instant case. The trial court admitted into evidence, without objection from defense counsel, both the arrest record for the 1983 Manslaughter conviction and fingerprints.
At the multiple bill hearing of March 17, 1998, it was stipulated that Officer Vic Bono ("Officer Bono") was an expert in analyzing fingerprints. Officer Bono took the fingerprints of the defendant in court the day of the hearing. Officer Bono testified that he was the custodian of certain arrest records on the defendant for a manslaughter conviction from 1983. He further testified he had compared the fingerprints on the arrest record from 1982 and determined that they were identical to the prints made by the defendant that day in court. Officer Bono also stated that the prints on the arrest register for the distribution of cocaine conviction were also identical to the prints he took of the defendant that day in court. He also identified a packet containing a bill of information, plea form, docket master and minute entries of the defendant's plea to manslaughter in 1983. Officer Bono testified that the fingerprints on all the state's documents were made by the same person, the defendant.
To establish identity, the State need only present competent evidence that there is a prior felony conviction and that the defendant is the same person who was convicted of the prior felony. State v. Langlois, 96-0084 (La.App. 4 Cir. 5/21/97), 695 So.2d 540, writ granted in part and remanded, 97-1491 (La.11/14/97), 703 So.2d 1281. What constitutes competent evidence varies from case to case.
The defendant's contention is without merit.
Next, the defendant argues that the State presented no evidence to establish the discharge date of the alleged prior conviction. Thus, the State failed to prove that the cleansing period had not elapsed. We agree.
La. R.S. 15:529.1(C), the Habitual Offender Law, provides that the statute does not apply when more than ten years have elapsed since the expiration of the maximum sentence or sentences of the previous convictions or convictions, and the time of the commission of the last felony for which he has been convicted. Any period of servitude by a person in a penal institution shall not be included in the computation of the ten-year period. The State has the burden of proving that ten years has not elapsed between the defendant's release from custody on the prior offense and the new offense. State v. Anderson, 349 So.2d 311 (La.1977); State v. Lorio, 94-2591 (La.App. 4 Cir. 9/28/95), 662 So.2d 128; State v. Brown, 598 So.2d 565 (La.App. 4th Cir.1992).
The Louisiana Supreme Court has stated that the expiration of a previous sentence is determined by the date of the actual discharge from supervision by the Department of Corrections. State ex rel. Wilson v. Maggio, 422 So.2d 1121, 1123 (La.1982); State v. Anderson, 349 So.2d 311 (La.1977). "Discharge from supervision *650 can take place earlier than the theoretical date on which the initial sentence would have terminated, because of a pardon, commutation, or good time credit. Or it can take place later because of parole revocation." State ex rel. Wilson v. Maggio, 422 So.2d at 1123.
In State v. Lorio, 94-2591 (La.App. 4 Cir. 9/28/95), 662 So.2d 128, the State failed to present any evidence of actual discharge dates, but rather calculated the discharge date based upon the full sentence and the date of conviction without taking into account possible early discharge for good time or for other reasons. This court stated:
It is possible that the appellant, given credit for time served and credit for good time, may have been discharged from custody on the first offense more than five years before the second offense was committed and likewise the appellant may have been discharged on the second felony offense more than five years before the third felony was committed.
State v. Lorio, 94-2591, p. 5, 662 So.2d at 131.
Accordingly, because the State did not present affirmative proof on the discharge dates of the predicate offenses, this Court vacated the multiple bill adjudication and sentence and remanded the case to the trial court.
In the instant case the predicate offense was a 1983 manslaughter conviction. The State introduced certified copies of the bill of information for the manslaughter conviction; the guilty plea form signed by the defendant, his attorney, and the trial judge; and several related minute entries. The State also introduced a Docket Master showing that on October 18, 1983, the defendant was sentenced to serve seven years in the custody of the Department of Corrections, with credit for time served. The State also introduced the arrest register which indicated that the defendant was arrested on September 14, 1982 and charged with second-degree murder. The arrest register for the instant offense indicates that the defendant was arrested on January 3, 1997 and charged with possession of cocaine with intent to distribute and with being a felon with a firearm. The length of time between these arrests illustrates that the cleansing period had elapsed. Consequently, the predicate offense of manslaughter could not be used to multiple bill the defendant. Therefore, the multiple bill sentence is hereby vacated and set aside.

ASSIGNMENT OF ERROR NUMBER 4
In the final assignment of error the defendant argues that he was denied the effective assistance of counsel. We pretermit any discussion regarding this assignment of error because of our discussion regarding the Errors Patent within the record and proceedings, as well as our discussion and disposition in Assignments of Error Number 3 and 4. They render this assignment of error moot.

CONCLUSION
For the foregoing reasons, we set aside and vacate the defendant's guilty plea and sentence in case # 389-029 (Attempted Felon in Possession of a Firearm), case # 386-334 (Attempted Felon in Possession of a Firearm), and case # 386-338 (Aggravated Battery). Accordingly, we remand this matter to the trial court for a plea by the defendant as to the charged offenses in case # 389-029 (Attempted Felon in Possession of a Firearm), case # 386-334 (Attempted Felon in Possession of a Firearm), and case # 386-338 (Aggravated Battery). If the defendant enters a guilty plea, the trial court must sentence him accordingly. If the defendant enters a plea of not guilty, the trial court shall conduct a trial consistent with this opinion.
Further, we find that the trial court erred in denying the defendant's motion to suppress the evidence. Thus, we hereby grant the defendant's motion to suppress *651 the evidence. Additionally, the defendant's conviction and sentence for the possession with intent to distribute cocaine charge is reversed and remanded to the trial court for a new trial consistent with this opinion.
We further find that the State failed to prove the ten-year cleansing period had not elapsed; thus, the trial court erred in adjudicating the defendant a multiple offender. Therefore, the multiple offender adjudication and sentence is hereby vacated and set aside.
CONVICTION AND SENTENCE FOR CASE # 389-029 REVERSED AND REMANDED.
MOTION TO SUPPRESS EVIDENCE GRANTED.
MULTIPLE OFFENDER ADJUDICATION AND SENTENCE VACATED AND SET ASIDE.
GUILTY PLEA IN CASE # 389-029, # 386-334, AND # 386-338 SET ASIDE.
VACATED AND REMANDED.
BYRNES, J., dissents with reasons.
BYRNES, J., Dissents with Reasons.
I respectfully dissent based on my conclusion that the trial court properly denied the defendant David Campbell's motion to suppress. I would affirm Campbell's conviction and sentence for possession with intent to distribute cocaine. His guilty plea as a felon with a concealed weapon is also valid. I would also affirm Campbell's conviction and sentence as a multiple offender.
In the present case Campbell avers that the trial court erred in ruling that the officers had reasonable suspicion to justify an investigatory stop pursuant to La. C.Cr.P. art. 215.1. At issue is whether the evidence was seized without a prior unlawful intrusion into a citizen's right to be free from governmental interference.

Investigatory Stop
A reviewing court must take into account the "totality of the circumstances whole picture," giving deference to the inferences and deductions of a trained police officer "that might well elude an untrained person." United States v. Cortez, 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981); State v. Huntley, 97-0965 (La.3/13/98), 708 So.2d 1048. Deference should be given to the experience of the policemen who were present at the time of the incident; in reviewing the totality of circumstances, the officer's past experience, training and common sense may be considered in determining if his inferences from the facts at hand were reasonable. State v. Short, 96-1069 (La.App. 4 Cir. 5/7/97), 694 So.2d 549.
In State v. Huntley, supra, 708 So.2d at 1049, the Louisiana Supreme Court stated:
In making a brief investigatory stop on less than probable cause to arrest, the police "`must have a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" State v. Kalie, 96-2650, p. 3 (La.9/19/97), 699 So.2d 879, 881 (quoting United States v. Cortez, 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)). The police must therefore "articulate something more than an "`inchoate and unparticularized suspicion or "hunch."'" United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989) (quoting Terry v. Ohio, 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889 (1968)). This level of suspicion, however, need not rise to the probable cause required for a lawful arrest. The police need, have only "`some minimal level of objective justification....'" Sokolow, 490 U.S. at 7, 109 S.Ct. at 1585 (quoting INS v. Delgado, 466 U.S. 210, 217, 104 S.Ct. 1758, 1763, 80 L.Ed.2d 247 (1984)). A reviewing court must take into account the "totality of the circumstances the whole picture," giving deference to the inferences and deductions of a trained officer that might well elude *652 an untrained person. Cortez, 449 U.S. at 418, 101 S.Ct. at 695. The court must also weigh the circumstances known to the police "not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement." Id. [Emphasis added.]
In State v. Kalie, 96-2650 (La.9/19/97), 699 So.2d 879, 881, the Louisiana Supreme Court found that: "the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken so long as the circumstances, viewed objectively, justify that action," citing Scott v. United States, 436 U.S. 128, 138, 98 S.Ct. 1717, 1723-1724, 56 L.Ed.2d 168 (1978). Even if the officers do not articulate reasons justifying a stop and search, the officers need "articulable facts" taking into account the entire picture. If the officers were required to articulate the factors, the cases would express that the officers need to have articulated facts; however, the officers only need articulable facts. In other words, the officers need not articulate reasons justifying a stop; however, articulable facts must be found or determined from the record under the totality of circumstances.
In State v. Ganier, 591 So.2d 1328 (La. App. 4 Cir.1991), in which the police officers were patrolling a housing project in New Orleans known to be a center of drug trafficking. The juvenile saw the officers, turned "suspiciously", began to walk away slowly, and then began to run. The officers chased the defendant until he was apprehended. This court found that two factors were sufficient to justify a stop of the defendant: the area's reputation for drug trafficking, and the suspicious actions of the defendant. This court noted:
Although an innocent individual who has nothing to hide from police might flee so that such flight would be irrational, the action of fleeing in itself is inherently suspicious and justifies an investigation by a police officer exercising common sense. This is not a case of a man merely standing on a street corner who is detained by the police simply because he is there.

State v. Ganier, 591 So.2d at 1330. [Emphasis added.]
In Illinois v. Wardlow, 528 U.S. 119, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000), the defendant's unprovoked headlong flight coupled with his presence in an area of heavy narcotics trafficking was sufficient under the Fourth Amendment to justify a Terry investigative stop.
See also State v. Benjamin, 97-3065 (La.12/1/98), 722 So.2d 988, and State v. Short, 96-1069 (La.App. 4 Cir. 5/7/97), 694 So.2d 549; State v. Neal, 98-2751 (La.12/18/98), 731 So.2d 274; and State v. Adams, 98-1890, p. 3 (La.App. 4 Cir. 12/2/99), 748 So.2d 510. In these cases, the police had two factors that were sufficient to justify a stop of the defendant: the area's reputation for drug trafficking, and the suspicious actions of the defendant.
In the present case, there was reasonable suspicion to justify an investigatory stop of Campbell, given the information from the anonymous tip and the observations of the police officers. The tipster gave a detailed description of the defendant's clothing (black hat, black sweatshirt and black jeans), black four-door Buick with license plate CDH-637, and information that the defendant was dealing narcotics from the trunk of his vehicle. According to the police report narrative, the information was received around 8:50 a.m. on January 3, 1997, and the officers went straight to the 1000 block of North Robertson. The police report states that the arrest was made at 9:00 a.m. on January 3, 1997. There was little time lapse between the time the police received the tip, and the time that the officers went straight to that block. When the police first saw Campbell, he was closing the trunk of his car. The police corroborated the detailed description given by the tipster. *653 The description of the defendant, his clothing, the vicinity, the vehicle and the license were corroborated by the police. Officer Nelson stated that: "... it's hard to set up a surveillance in that area being it's a known narcotics area. We receive numerous complaints from that location." Under the totality of circumstances, considering that the descriptions matched the tipster's information; that the vicinity was a heavy narcotics-transaction area; and that there was a short time lapse when the officers went to the area and observed the defendant, the police had reasonable suspicion to believe that Campbell was engaging in criminal activity. The investigatory stop of Campbell was justified.
La. C.Cr.P. art. 215.1(B) provides for a limited frisk for weapons during an investigatory stop:
When a law enforcement officer has stopped a person for questioning pursuant to this Article and reasonably suspects that he is in danger, he may frisk the outer clothing of such person for a dangerous weapon. If the law enforcement officer reasonably suspects the person possesses a dangerous weapon, he may search the person.
The officer need not be absolutely certain that the person is armed, but the officer must be warranted in his belief that his safety or that of others is in danger. State v. Smith, 94-1502 p. 5 (La.App. 4 Cir. 1/19/95), 649 So.2d 1078, 1082. It is clear that an officer may make a protective search of the suspect for his own safety and the safety of others. State v. Davis, 92-1623 (La.5/23/94), 637 So.2d 1012, cert. denied, Davis v. Louisiana, 513 U.S. 975, 115 S.Ct. 450, 130 L.Ed.2d 359 (1994).
In State v. Wartberg, 586 So.2d 627 (La. App. 4 Cir.1991), this court noted that any person who is suspected of dealing drugs is probably armed with a weapon and officers need not refer to specific particular facts concerning the danger to their safety.
In the present case Officer Nelson stated that the location was a known narcotics area where the police received numerous complaints from that location. Considering that any person suspected of having drugs is probably armed with a weapon, the officers need not refer to specific particular facts concerning the danger to their safety. In the present case Officer Nelson referred to the pat-down for safety precautions. Officer Nelson testified at trial that he told Campbell that he was under investigation for narcotics. The officer stated that: "At that time I ordered him to place his hands on the vehicle for a pat-down search for my safety and my partner's safety, and for his safety." Under the totality of the circumstancesthe whole picture, giving deference to the inferences and deductions of a trained officer that might well elude an untrained person, the officers had reasonable justification to justify the pat down of the defendant for weapons. The officers' suspicions were justified and supported by the retrieval of the concealed weapon and cocaine.
Under the totality of circumstances, the officers had reasonable suspicion the to make a legal investigatory stop. The officers' inferences from the facts at hand were reasonable. The evidence was seized without a prior unlawful intrusion into a citizen's right to be free from governmental interference. Pursuant to a legal pat-down for weapons, when the officer found the concealed weapon, the knife, in Campbell's pocket, the officer had valid probable cause to arrest Campbell.
Further, there was sufficient evidence to support of the officers' claim that Campbell gave his consent to search his automobile, which the police verified belonged to him. One of the specifically established exceptions to the requirements of both a warrant and probable cause is a search conducted pursuant to consent. State v. Owen, 453 So.2d 1202 (La.1984). When made after an illegal detention or search, consent to search, even if voluntary, is valid only if it was the product of a free will and not the result of an exploitation of *654 the previous illegality. Among the factors considered in determining whether the consent was sufficiently attenuated from the unlawful conduct to be a product of a free will are whether the police officers adequately informed the individual that he need not comply with the request, the temporal proximity of the illegality and the consent, the presence of intervening circumstances, and the purpose and flagrancy of the official misconduct. State v. Owen, supra; State v. Zielman, 384 So.2d 359 (La.1980); State v. Bennett, 383 So.2d 1236 (La.1979).
In the present case, because the investigatory stop and arrest were proper, a review to identify intervening circumstances showing that the consent was the product of free will and not the result of an exploitation of the previous illegality, is precluded because there was no official misconduct. The voluntariness of the defendant's consent to search is a question of fact to be determined by the trial judge under the totality of the circumstances. State v. Williams, 98-1006 (La.App. 5 Cir. 3/30/99), 735 So.2d 62, writ denied 99-1077 (La.9/24/99), 747 So.2d 1118. In the present case, both officers testified that Campbell gave oral consent to search his automobile, and Campbell said he had nothing to hide. The testimony was sufficient to show that Campbell gave his valid consent to search, and the trial court properly denied Campbell's motion to suppress and properly found that the evidence of 33 packets of cocaine found pursuant to Campbell's consent to search his vehicle, was admissible.
Campbell also claims that the trial court erred in sentencing him as a multiple offender. Campbell avers that the State did not prove that the cleansing period from the time of Campbell's March 31, 1983 conviction was less than ten years from the date he could have been discharged and the date of the present offense, which occurred on January 3, 1997.
Campbell's attorney objected to the multiple bill to protect the record but made no specific objection to the proof of the lapse of the ten-year cleansing period. The defendant must make known the grounds for his objection, and he is limited on appeal to those grounds articulated at trial and must point to the specific error so that the trial court has the opportunity to make the proper ruling and prevent or cure any possible error. La.C.Cr.P. art. 841; State v. Sullivan, 97-1037 (La.App. 4 Cir. 2/24/99), 729 So.2d 1101, writ denied 99-0797 (La.9/17/99), 747 So.2d 1093. The challenge to the admissibility at a habitual offender proceeding was not preserved for appeal, where an objection was not made contemporaneously to the lack of a discharge date in State v. Jones, 94-0071 (La.App. 4 Cir. 3/29/95), 653 So.2d 746, 748.
In State v. Lorio, 94-2591 La.App. 4 Cir. 9/28/95, 662 So.2d 128, 130, at the multiple bill hearing, the defendant objected to the certified copies of the prior charges used as the predicate but the defendant did not object to the lack of a discharge date. This Court's review the multiple bill sentence included a review of the discharge date but did not sit as an en banc court to overrule State v. Jones, supra.
In State v. Martello, 98-2066 (La.App. 4 Cir. 11/17/99), 748 So.2d 1192, this Court reviewed the multiple bill sentence where the defense counsel said that the defendant did not want to delay his appeal but maintained an objection to the habitual offender proceedings. Also the defendant's handwritten letter was filed in the record. The letter reflected that Martello did not want to delay his appeal by opposing the habitual offender bill but he desired to maintain his right to object. Under those circumstances, this Court found that the defendant preserved his right to raise the cleansing period issue.
In the present case, although counsel objected, he did not point to a specific error so that the issue was not properly preserved for an appeal of that error.
*655 Furthermore, if the cleansing period issue were reviewable in the present case, a calculation shows that the ten-year cleansing period had not elapsed between the manslaughter conviction date of October 18, 1983, for which Campbell was sentenced to 7 years at hard labor, and the date of the commission of possession of intent to distribute cocaine on January 3, 1997.
Generally, the State must show that the cleansing period of La. R.S. 15.529.1 has not elapsed. However, it is sufficient to show that the cleansing period has not lapsed if the earliest possible release date can be determined, taking into account the maximum amount of credit the defendant could have for time served, the maximum amount that the defendant could have been eligible for good time, and considering that the defendant would have had to serve at least one-third of the sentence to be eligible for parole. See State v. Martello, supra; State v. Falgout, 575 So.2d 456 (La. App. 4 Cir.1991).
In Martello, supra, this Court referred to State v. Lorio, supra, in which it could not be determined on the face of the dates, that the ten-year cleansing period had not elapsed from the time of the prior conviction and the time of the present offense. This Court further stated:
In Lorio, supra, this Court cited Falgout with approval where the State failed to present evidence of an actual discharge date. However, the court ultimately vacated the habitual offender sentence because the State had calculated the discharge date based on the full sentence and the date of the defendant's conviction without taking into account possible early discharge for good time or for other reasons. Martello, supra, 748 So.2d at 1202.
Because in Lorio, supra, the State did not calculate the discharge date by taking into account an early discharge for good time, this Court determined that the State failed to give the actual discharge date, and therefore, the State did not show that the ten-year cleansing period had not lapsed.
In Martello, supra, this Court found that the State properly showed that the cleansing period had not lapsed for purposes of the multiple bill where the State took into account time for good time, time for another conviction served, and parole. This Court noted that:
... pursuant to La. R.S. 15:571.3(B) and 15:571.4(B), as in effect in 1986, and assuming defendant's May 1986 conviction was his first conviction, he could have been eligible for "good time" reduction of his sentence at the rate of 15 days per month for time actually served. Pursuant to La. R.S. 15:574.4, as in effect in 1986, the defendant would have been eligible for parole after serving one third of his sentence. However, a parole date does not equate with a discharge date because the parolee remains under the supervision of the Department of Corrections; a parolee's discharge date is the date he is actually discharged from such [parole] supervision.
In the present case, the maximum amount of credit for time served would have been 13 months based on the arrest date of September 14, 1982 until October 18, 1983. Assuming that Campbell could have a possible maximum credit for time served of 13 months from the time he was arrested. Subtracting 13 months for credit for time served from his seven-year sentence would be five years and 11 months. A sentence of the remaining five years and 11 months would be calculated from October 12, 1983 or September 1989. An additional ten years would not have lapsed by January 1999.
If Campbell received good time, he would have been finished his jail term after three and a half years or 42 months from October 18, 1983 (this is the earliest date used if he received a maximum of 13 months for credit for time served) and the earliest possible release date for good time would be April 12, 1988. The ten-year cleansing period did not lapse until April *656 12, 1998. As the current offense of possession with intent to possess cocaine was committed on January 3, 1997, the ten-year cleansing period had not lapsed in the present case, if Campbell were given credit for time served and good time.
Also Campbell could be placed on parole after serving one-third of his sentence, which would have been 1/3 of seven years; however, he would not be discharged from parole supervision until the entire sentence time was completed. He still would not be discharged from supervision for seven years, which would be five years, 11 months if given 13 months credit for time served, or September 1989. The ten-year cleansing period began in September 1989 and would end in September 1999. Campbell's present offense of possession with intent to distribute cocaine was committed on January 3, 1997, less than ten years from the discharge of supervision for his sentence for the offense of manslaughter.
While the record does not affirmatively establish that the ten years had or had not elapsed, the showing indicates that more probably than not it had not elapsed between the crimes. State v. Martello, supra; State v. Turner, 365 So.2d 1352, 1355 (La.1978). In Turner, the Louisiana Supreme Court noted that if, in fact, the defendant "is able to show that the five years [now ten years] Had elapsed, then he can secure appropriate relief upon post-conviction proceedings." Id.
In the present case, while it is possible, though highly improbable, that Campbell received a pardon or commutation of his 1983 sentence, the record reflects that more probably than not the cleansing period had not expired. This is sufficient to sustain a habitual offender adjudication.
Accordingly, I would affirm the defendant's conviction to possession with intent to distribute cocaine, as well as his conviction and sentence for 15 years at hard labor as a second offender.
NOTES
[1] The defendant's name is given as David Cambell on the bill of information.
[2] The defendant also pled guilty to two other charges. In case # 386-334 he pled guilty to another amended charge of attempted felon with a firearm and in case # 386-338 he pled guilty to aggravated battery.
[3] 1999 WL 679673.