383 So.2d 1236 (1979)
STATE of Louisiana
v.
James C. BENNETT.
No. 65222.
Supreme Court of Louisiana.
December 13, 1979.
On Rehearing May 19, 1980.
*1237 J. David Garrett, Giddens, McKenzie & Garrett, Shreveport, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Paul J. Carmouche, Dist. Atty., James C. McMichael, Jr., Asst. Dist. Atty., Shreveport, for plaintiff-appellee.
SUMMERS, Chief Justice.
James Bennett pled guilty to a charge of possession of a controlled dangerous substance, reserving the right to appeal the trial court's denial of his motion to suppress the evidence. For the reasons assigned below, we affirm the judgment of the trial court.
At about 5:00 on the afternoon of Sunday, March 4, 1979 Officer Ray Copeland of the Vivian Police Department, Caddo Parish, Louisiana, was patrolling Highway 1 in Vivian. On a gravel parking lot he saw a 1975 Ford automobile moving toward the highway, its rear wheels throwing gravel several feet. The vehicle took off at what he believed to be a high speed, "fishtailing", and pulled out as if to enter the highway. To stop these erratic movements Officer Copeland had to turn on his blinking lights and pull in front of the car. At that point he recognized the driver as James Bennett whom he knew previously. Bennett's eyes were bloodshot and his manner of speech slurred and not his normal manner.
The officer asked Bennett to step from his vehicle. As he did so, Copeland saw on the front floorboards, on the driver's side, a paper bag. Although he could not see the contents of the bag, he testified that he had determined to arrest Bennett for careless and reckless operation of a vehicle, and, in addition he suspected that Bennett might be intoxicated. Copeland therefore leaned into the car to see if the bag contained a six-pack of beer or a liquor bottle; he saw that the bag contained a large quantity of white pills.
As Officer Copeland straightened up, Bennett began explaining that he did not know how the pills came to be there. Officer Copeland said, "Craig, you don't have to tell me nothing." Copeland radioed the Sheriff's Department for assistance; Bennett was still trying to explain the presence of the pills and Copeland again told him, "You've got certain rights. You don't have to say anything, Craig." Copeland asked Bennett if he knew and understood his rights and Bennett later testified that he had in fact been warned and had understood the rights referred to. Copeland then asked Bennett what the pills were and Bennett said he thought they were Quaaludes.
About three minutes after Copeland's radio call, a Caddo Parish Sheriff's car with two deputies arrived. The two deputies looked into the car and saw the bag of pills. Copeland obtained a formal Miranda warning card from them, read it to Bennett, Bennett indicated he understood the rights and then signed the form to indicate further his understanding. Bennett's car was locked with the bag of pills inside and Copeland drove Bennett to the Sheriff's Substation while the two deputies waited for a tow truck. Copeland then told Bennett he was under arrest for careless and reckless operation and for possession of a controlled dangerous substance. The car was towed to a local body shop and the deputies then went to the substation.
After the deputies arrived at the substation, Officer Copeland read Bennett the Miranda warnings a second time and then asked him to consent to a search of the vehicle. Bennett was warned that he did not need to consent to the search; Copeland read the consent form to him and he read it for himself. Bennett then signed the form giving consent to the search of the vehicle. Later Bennett testified that he believed that the officers had already seized the bag of pills and that the search was for anything left in the car, but he also testified that he did not see the officers remove anything, including the pills, from the car before he was driven away from the scene. Thus his belief, if true, rested on an unsupported assumption.
Armed with the consent form, the officers went to the body shop to which Bennett's *1238 car had been towed and searched it, seizing the bag of pills in the process.
On March 27, 1979 the District Attorney for the First Judicial District filed a bill of information, charging Bennett with possession, with intent to distribute, of a class II Controlled Dangerous Substance, Methaqualone, a violation of La.Rev.Stat. 40:967(A)(1). On April 10, 1979 the defense filed a motion to suppress the evidence; on April 25, 1979 the motion was heard. The defense argued that the officers' peering into the bag on the floor of the car was a search contrary to the Fourth Amendment to the United States Constitution and to Article 1, Section 5, of the Louisiana Constitution of 1974, and that the towing of the car to impound it at a body shop selected by the police constituted an actual seizure of the bag of pills contained in the car. The defense further argued that the consent given by Bennett for the later search of the car was vitiated by the prior illegal search and by his arrest.
The State conceded that the officers' looking into the bag while it was in the car was an illegal search but argued that Bennett's later consent was freely and voluntarily given and cured the taint of the prior illegal search. Thus the State argued the later search was consensual, a valid exception to the warrant requirement.
The trial judge denied the motion to suppress, holding that the later consent was valid and cured the defect in the prior search. On May 25, 1979 the State filed an amended bill of information, charging Bennett with simple possession of a controlled substance, a violation of La.Rev.Stat. 40:967(C); Bennett pled guilty, reserving the right to appeal the adverse ruling on the motion to suppress (a proceeding authorized by State v. Crosby, 338 So.2d 584 (La. 1976)), waived arraignment and was sentenced to pay a fine of $600 and to serve three years at hard labor, the incarceration to be suspended upon three years' supervised probation under the statutory and special conditions.
On appeal, in brief, the defense argued that both the search and seizure were completed by the officers when the car was towed away, leaving the later consent without legal significance. This is based, in turn, upon the proposition that a seizure occurs when the owner is rendered unable to control his property. In oral argument the defense further suggested that the initial stop and arrest were without probable cause.
It is true that the police took control of the vehicle and it is true, as the defense contends, that the vehicle "served as the vessel containing the contraband." However, it does not follow either logically or necessarily, that police custody of a container amounts to a seizure of the contents within the contemplation of the evidentiary law. To the contrary, there is a considerable jurisprudence on the issue of containers, such as suitcases, in which the owner has a reasonable expectation of privacy, and the point at which the police may enter that container to inspect the contents. See, e. g., State v. Mejia, 257 La. 310, 242 So.2d 525 (1971). This distinction between control of the container and right to search its contents is especially marked in the case of automobiles. See, e. g., State v. Rome, 354 So.2d 504 (La. 1978). Thus the contention that the police towing of the vehicle amounted to a seizure of its contents is untenable. We hold, rather, that the impounding of the car and the later seizure of the bag of pills were distinct acts, and the issue before us is whether the seizure flowed from the prior search or was independently authorized by virtue of the consent obtained from the defendant.
The defense argues that the consent of the defendant "was obtained through deceit and trickery and through the exploitation of the prior illegal search." In support of this contention, the defense cites State v. Mitchell, 360 So.2d 189 (La. 1978), for the factors to be used in testing the voluntariness of such a consent. The State argues that the same factors support the trial judge's conclusion that the consent was validly given.
It is uncontested that a valid consent will rehabilitate a prior warrantless search. *1239 State v. Williams, 353 So.2d 1299, 1304 (La. 1978) and cases there cited. In fact, in Williams the vehicle in question had been impounded by the police prior to the arrest of the defendant, yet a search conducted after a custodial consent was ruled permissible. In that same case, the defendant's house had been searched prior to the consent, yet a later search of the house, pursuant to the same signed consent used to search the car, produced evidence which this Court held was admissible. The underlying theory is that the consent operates as a waiver of the constitutional protection against unreasonable searches and seizures.
In Williams, the factual voluntariness of the consent was not apparently contested and the attack on the admission of the evidence was predicated on the assumption that the searches were defective as a matter of law. This Court had occasion to consider the voluntariness of a consent in State v. Angel, 356 So.2d 986 (La. 1978), where the police illegally arrested the driver of a truck suspected of carrying narcotics. This Court upheld the search of the truck on the ground that the driver had voluntarily consented thereto. The driver was advised of his rights immediately after the illegal arrest, was advised of his right to refuse to consent to a search of the truck, and was then asked for permission to search it. He then gave the police oral permission. The truck was towed to police headquarters, the driver again advised of his rights, and again advised of his right to decline. He then signed a form giving his consent to the search.
In State v. Mitchell, 360 So.2d 189 (La. 1978), the defendant was stopped while driving down the street, his car searched over his objections, and two marijuana cigarettes seized. The police then told the defendant he might as well submit to a search of his home as they could get a warrant in twenty minutes, after which he signed a consent form. The trial court sustained the defense motion to suppress the evidence seized from the vehicle but denied the motion to suppress the evidence seized from the house. This Court reversed the conviction, holding that the seizure from the house was predicated upon a consent not the product of the defendant's free will, but rather an exploitation of his illegal arrest. In the course of this decision, the Court remarked that
"... In deciding this issue, the court should take into account not only whether the governmental officers adequately informed the accused that he need not comply with their request, but also the temporal proximity between the arrest and the act (consent) alleged to be coerced, the presence of intervening circumstances, and the purpose and flagrancy of the official misconduct." 360 So.2d 189, 191.
This remark was but another way of summarizing the facts in that case: where the officers clearly stopped the defendant because he was believed to be transporting a large quantity of contraband; where the arrest was illegal; where the defendant was not advised that he need not submit to the searches; where within a minute or so after his arrest and still on the scene of the arrest he was confronted with the request to search his home and warned that if he did not consent a warrant would be obtained. By these tests the official misconduct was found to have been flagrant and for the purpose of obtaining evidence of controlled substances.
In the case at bar, however, Officer Copeland's testimony was uncontradicted that he stopped the defendant because Bennett was driving erratically and dangerously; and that he intended to and did arrest Bennett for careless and reckless operation of a motor vehicle. The arresting officer testified that he warned Bennett twice informally and no less than twice with the full Miranda panoply that the defendant need not say anything and that he need not consent to the search. The two formal Miranda warnings and the warning that the defendant need not consent to the search were not contested by the defendant and were corroborated by the one deputy who testified. In distinction to Mitchell, at least ten minutes elapsed between the arrest and the *1240 consent to search, and the consent was given not on the scene of the arrest in the face of threats to obtain a warrant, but in another location and after advice as to his right to decline his consent. Thus while the drive to the station and the wait for the two deputies presumably gave Bennett some time for reflection, it is undisputed that at lease five cautionary warnings intervened between the arrest and the consent to the search. One of those warnings bore specifically upon the consent itself.
Finally, it has not been demonstrated, or even seriously contended, that Copeland's arrest of Bennett for careless and reckless operation was anything other than proper, and was, in addition, action taken to not only enforce the law but to prevent Bennett from injuries which would probably follow his reckless driving, further distinctions from Mitchell. That Bennett was validly and lawfully under arrest for one charge (reckless driving) cannot be obscured by contentions that he may not then have been charged upon sufficient probable cause on a second charge (i. e., possession).
In the final analysis, the determination rested upon the judge's rejection of the defendant's self-serving statement in which he assumed that the pills had been seized and that the consent was to apply to other materials in the car, weighed against the implicit determination that the officers' testimony was credible that nothing had been removed from the car, and the defendant's own admission that he had seen nothing removed from the car. As we said in State v. Dunbar, 356 So.2d 956 (La. 1978):
"Questions of consent are issues of fact, dealing as they do with witness credibility. State v. Temple, 343 So.2d 1024 (La. 1977); State v. Bartley, 329 So.2d 431 (La. 1976). The determination of the trial judge, who has the opportunity to hear and observe the witnesses, is entitled to great weight on review. State v. Temple, supra. . . . Under the circumstances of this case, we cannot say that the trial judge erred in finding that the state had carried its burden of showing that the entry fell under the exception to the warrant requirement which allows a lawful search without a warrant on proper consent." 356 So.2d at 961-962.
Similarly, we accord to the trial judge's determination the great weight it merits in a close case and find that the defense has failed to establish that the consent given was not voluntary, and thus did not cure the defect of the prior search.
For the reasons assigned, the conviction and sentence are affirmed.
CALOGERO, J., concurs.
STONE, J. Ad Hoc, and BLANCHE, J., dissent.
DENNIS, J., dissents with reasons.
DENNIS, Justice, dissenting.
I respectfully dissent. While defendant may have signed the consent form I believe any consent given was tainted by the preceding illegal search which led to defendant's arrest for possession of methaqualone. At the time defendant signed the form, only a few minutes after the illegal search, he had been continuously in police custody, he knew that the police had already found the pills, and he had been informed that he was under arrest for possessing the pills. Under these facts, I believe that the consent was a product of the illegal search and, therefore, the trial judge was in error in denying the defendant's motion to suppress.

ON REHEARING
CALOGERO, Justice.[*]
Defendant James Bennett pled guilty to possession of methaqualone following the trial court's denial of his pre-trial motion to suppress the pills. Defendant reserved his right to appeal the motion to suppress ruling under State v. Crosby, 338 So.2d 584 (La.1976) and on original hearing we affirmed the trial court's ruling. We granted *1241 a rehearing to reconsider our ruling that defendant's consent to search was voluntarily given.
The facts of the case are not seriously disputed. At approximately 5:00 p. m. on March 4, 1979, Vivian police officer Roy Copeland observed defendant driving a 1975 Ford, "fishtailing," and throwing gravel in a parking lot adjacent to Highway 1 in Vivian. Officer Copeland stopped defendant and asked him if he had a problem. While defendant was attempting to explain to the officer that his brakes were locked, the officer (who knew defendant) noticed that defendant's eyes were bloodshot and that his speech was slurred.
After defendant got out of the car at the officer's request Copeland noticed a brown paper bag on the floorboard on the driver's side. Suspecting that the bag might contain beer or wine (although the shape of the bag gave no such indication) the officer leaned into the car, opened the bag, and saw a large number of white pills therein.
When defendant began explaining that the pills weren't his, the officer told the defendant that he didn't have to tell him anything. After calling for assistance Officer Copeland informed defendant that he was under arrest for careless and reckless driving and for possession of controlled dangerous substances. The officer then asked defendant if he knew his rights, obtained an affirmative response, and asked defendant what the pills were. Defendant told Copeland that he thought the pills were called "Quaaludes".
When two sheriff's deputies arrived, Officer Copeland obtained a Miranda rights warning card from them, read it to defendant, and defendant signed the card. Officer Copeland took both deputies over to the car and both deputies opened the bag and looked in. Copeland then took defendant to the Caddo Parish Sheriff's Department Substation where defendant was again told that he was under arrest for careless and reckless driving and for possession of controlled dangerous substances.
Defendant was read his Miranda rights a second time, was asked to sign a "consent to search" form, but was told that he didn't have to sign the form. Defendant read the form and signed it, whereupon the police went to the towing company where defendant's car had been taken and removed the bag containing 475 pills later determined to be methaqualone. No other contraband was found in the car. Defendant also made a taped statement to the police which is not at issue here.
In oral argument on rehearing the state and defense conceded that the stop and arrest for careless driving was lawful and that the officer's opening the bag was an illegal search. Defendant contended that at the time he signed the "consent" form he mistakenly believed that the officers had already removed the bag of pills from the car. This assertion was not seriously disputed by the state.
In our original opinion holding that the pills were admissible we focused almost entirely upon the voluntariness of the consent under Fifth Amendment standards. However, in determining that defendant's consent was "voluntarily" given we failed to give sufficient weight to the "causal connection" test established in Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975) and further explained in Dunaway v. New York, 442 U.S. 200, 216-220, 99 S.Ct. 2248, 2258-2260, 60 L.Ed.2d 824 (1979). See also our analysis in State v. Giovanni, 375 So.2d 1360 (La.1979); State v. Mitchell, 360 So.2d 189 (La.1978); State v. Scott, 355 So.2d 231 (La.1978).
Satisfying the Fifth Amendment voluntariness grounds is only the "threshold" condition of Fourth Amendment analysis required by Brown. Dunaway v. New York, 99 S.Ct. at 2260. In Brown, supra, the Supreme Court held that the taint of a confession resulting from an illegal arrest was not purged by Miranda warnings given defendant prior to his arrest. The Court stated:
"Thus, even if the statements in this case were found to be voluntary under the Fifth Amendment, the Fourth Amendment issue remains. In order for the causal chain, between the illegal arrest and the statements made subsequent *1242 thereto, to be broken. Wong Sun v. U. S. requires not merely that the statement meet the Fifth Amendment standard of voluntariness but that it be `sufficiently an act of free will to purge the primary taint'." 371 U.S. 471 at 486, 83 S.Ct. 407 at 416, 9 L.Ed.2d 441. Brown, 95 S.Ct. at 2261.
Here, there is involved a consent to search following an illegal search. While in Brown, supra, the evidence in dispute was a confession which followed an illegal arrest, the critical question as to the admissibility of the evidence is the same:[1] "... whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." Maguire, Evidence of Guilt, 221 (1959); Wong Sun, 83 S.Ct. at 417. See also Fahy v. Connecticut, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963).
In deciding this issue the Court should consider not only whether the police informed defendant of his Miranda rights and his right to refuse to consent to search, but also the temporal proximity between the illegal act and the act alleged to be coerced, the presence of intervening circumstances, and the purpose and the flagrancy of the official misconduct. Brown, 95 S.Ct. at 2261-2262; Mitchell, 360 So.2d at 191; Giovanni, 375 So.2d at 1364; Scott, 355 So.2d at 235-236.
After considering those factors under the circumstances of this case we cannot say that defendant's "consent" to search was sufficiently an act of free will so as to purge the taint of the illegal search. There was only a ten minute interval between the time of the illegal search and the "consent" to search. This short interval was not sufficient to attenuate the coercive influence of the illegal search and arrest for possession of controlled substances, especially where there were no intervening factors of any significance which would tend to show that defendant was acting of his own free will.[2] The eighteen year old defendant was continuously in the presence of police officers and never consulted with his parents or an attorney. The "consent" was given while under arrest and in the confines of a police station.[3]
These factors weigh heavily against the state. Furthermore, the officers' leaving the pills in the car after the search (and of course defendant had been made aware of their discovery) bears strongly upon the question of whether defendant voluntarily consented to the second search and attendant seizure. The illegal search was absolutely instrumental in provoking the consent of defendant. State v. Hoven, 269 N.W.2d 849 (Minn.1978).
Defendant had seen three officers look into the bag containing the pills and had twice been told that he was under arrest for possession of controlled substances. At this point "the cat was out of the bag" as a result of the illegal search and defendant's *1243 acquiescence to the subsequent search was at most a submission to police authority by a defendant who knew that there was no other contraband in the car. People v. Clark Memorial Home, 114 Ill.App.2d 249, 232 N.E.2d 546 (1969). See also State v. Dudley, 561 S.W.2d 403 (Mo.App.1977); People v. Bilderbach, 62 Cal.2d 757, 44 Cal. Rptr. 313, 401 P.2d 921 (1965). For all defendant knew, the police had already taken that which they had discovered and needed his permission to search for other drugs. The state has failed to show that the "consent" given was sufficiently the product of defendant's free will to attenuate the taint of the warrantless illegal search. Therefore, the evidence seized should be suppressed.

Decree
For the foregoing reasons the judgment on the motion to suppress is reversed, and the motion is granted. Defendant's conditional guilty plea is set aside, the conviction reversed, and the case remanded to the trial court for further proceedings.
REVERSED AND REMANDED.
MARCUS, J., concurs.
NOTES
[*] Honorable Richard H. Gauthier participated in this decision as an Associate Justice Pro Tempore.
[1] Defendant here was unlawfully detained on the careless and reckless charge, but his arrest for possession of controlled substances was illegal, because it was based solely upon an illegal warrantless search of his vehicle. State v. Mitchell, 360 So.2d at 191.
[2] In Giovanni, supra, we suppressed statements made seven days after an illegal arrest. In Scott, supra, we found fairly close temporal proximity between the arrest and confession where the arrest occurred one night and the confession occurred the next morning and in Brown, supra, the court noted that the defendant's first statement was separated from his illegal arrest by less than two hours. Of course, the importance of the time interval between the illegal act and the consent or confession of the defendant must be evaluated in the context of the facts of each particular case.
[3] The state's burden of proving the voluntariness of a consent to search will be heavier where a defendant is in custody. United States v. Hearn, 496 F.2d 236 (6 Cir. 1974). The United States Supreme Court has pointed out on two occasions in Fourth Amendment cases where no illegal conduct was involved that the fact that a consent to search was given in a public place rather than in a police station is a relevant factor in determining the voluntariness of a consent to search. United States v. Watson, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976); Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).