MOORE, J.
The defendant, Jamarcus M. Bates, was charged with possession of a firearm by a convicted felon in violation of La. R.S. 14:95.1. After the trial court denied his motion to suppress, Bates entered a Crosby plea agreement with the state in which he agreed to plead guilty to the responsive charge of attempted possession of a firearm by a convicted felon in exchange for a sentence of seven years at hard labor to run concurrently with a separate seven-year sentence on an unrelated conviction. Bates also received credit for time served and reserved the right to seek review of the trial court's denial of his motion to suppress, which is the subject of the instant appeal. Finding no error in the court's ruling on the motion to suppress, we affirm Bates's conviction and sentence.
FACTS
On September 15, 2016, several Shreveport Police Department ("SPD") officers were dispatched to the McDonald's at 7000 West 70th Street, Shreveport, Louisiana, in response to a reported shooting. Upon their arrival, the officers encountered Jeremy Brooks carrying a sword in a sheath. Brooks claimed that two men, Ladamion Davis and Lakendrick Scroggins, pulled a gun on him when he tried to collect his belongings from a house at 2761 Rosemont Street. He said that he fled to the McDonald's and was pursued in a white Mustang driven by Scroggins. Scroggins shot at Brooks at the intersection of West 70th Street and Mansfield Road, but did not follow him into the McDonald's. The manager of the McDonald's confirmed that shots were fired outside the restaurant, and he, as well as Brooks, had called the police. According to the police report, Brooks said that the white Mustang was at the Rosemont address.
While questioning Brooks, the officers received a second call from dispatch, reporting a stabbing at 2761 Rosemont. The officers proceeded there, where they found Ladamion Davis standing in the driveway holding a towel over 2 stab wounds, at least one of which completely penetrated his chest through his left pectoral muscle.
The officers entered the home in order to secure the crime scene. They found blood on the kitchen floor leading to the carport door. Inside the house they found several people, including four black females, two toddlers, and two black males, including Scroggins. The occupants were moved outside, but not allowed to leave. Police continued searching the house and found another black male, Bates, wrapped in a comforter and asleep on a large ottoman in the living room. As an officer pulled back the comforter, they observed Bates in a fetal position with a semi-automatic *676 pistol in his lap. One officer secured the gun while another officer arrested Bates. Bates was informed of his Miranda rights and said he understood them.
Scroggins, the alleged shooter, was also arrested as he attempted to walk down Rosemont away from the outside area of the house. He told police that Brooks had initiated the fracas by attempting to take clothing items or shoes that were not his. When the dispute erupted between Davis and Brooks, the latter attacked Davis with the sword, stabbing him. Brooks was also arrested and later charged with aggravated battery.
Bates was charged by bill of information with possession of a firearm or carrying a concealed weapon by a convicted felon. He entered a not guilty plea at his arraignment.
A joint preliminary examination was held for both Bates and Brooks. Detective Kelly Coffey of the SPD testified that she was dispatched to 2761 Rosemont shortly after the house was searched by SPD officers and Bates arrested. Det. Coffey was advised by officers on the scene that they had conducted a warrantless search of the home for officer safety reasons. She further testified that later that day she obtained the consent of Jacqueline Scroggins, the owner of the house, to conduct additional searches. On cross-examination, Det. Coffey referred to the detailed report of Corporal Susan Mendels, one of the initial responding officers. Relying on this report, she stated that Brooks led officers to believe to believe that the man who fired the shots at him was within the 2761 Rosemont residence.
Following the preliminary examination, counsel for Bates indicated that he would file a motion to suppress on grounds that the discovery provided by the state and Det. Coffey's preliminary examination testimony were insufficient to support a warrantless search of the residence. Counsel further argued that while it was unclear exactly when the owner's consent was obtained, it was after the initial search resulting in his arrest.
The state opposed the motion on grounds that a warrantless entry of the residence at 2761 Rosemont was justified due to exigent circumstances, and that the homeowner consented to the search.
Argument on the motion was heard by the court on May 10, 2017. No additional evidence or testimony was adduced. Instead, the parties agreed to submit the matter based on the testimony given by Det. Coffey at the preliminary examination.
Following argument, the trial court denied the motion to suppress, and later that same day, Bates pled guilty to the responsive charge of attempted possession of a firearm by a convicted felon, in violation of La. R.S. 14:95.1 and La. R.S. 14:27. Pursuant to the plea agreement, Bates was sentenced to seven years at hard labor, which would run concurrently with an unrelated seven-year sentence. Bates also received credit for time served and reserved the right to seek review of the trial court's denial of his motion to suppress.
The instant appeal followed.
DISCUSSION
In his sole assignment of error, Bates argues that the trial court erred when it denied the motion to suppress. The gun found in his possession, he argues, was obtained pursuant to an illegal search of the residence at 2761 Rosemont. More specifically, Bates argues that Det. Coffey's testimony regarding the need for a warrantless search of the residence is unclear. He submits that the warrantless entry into the home was not justified on the basis of "officer safety" because the stabbing victim, *677 Davis, and the alleged shooter, Scroggins, were outside the house when the officers searched it. Bates further argues that it is also unclear from Det. Coffey's testimony exactly when the residence's owner consented to a police search, i.e., before or after the search that resulted in Bates's arrest.
The state maintains that both exigent circumstances and the owner's consent justified the warrantless search of the Rosemont house.
The right of every person to be secure in his person, house, papers and effects, against unreasonable searches and seizures, is guaranteed by the Fourth Amendment to the U.S. Constitution and Article I, § 5, of the 1974 Louisiana Constitution. It is well settled that a search and seizure conducted without a warrant issued on probable cause is per se unreasonable unless the warrantless search and seizure can be justified by one of the narrowly drawn exceptions to the warrant requirement. State v. Thompson , 02-0333 (La. 4/9/03), 842 So.2d 330 ; State v. Tatum , 466 So.2d 29 (La. 1985) ; State v. Howard, 49,965 (La. App. 2 Cir. 6/24/15), 169 So.3d 777, aff'd , 2015-1404 (La. 5/3/17), 226 So.3d 419 ; State v. Ledford , 40,318 (La. App. 2 Cir. 10/28/05), 914 So.2d 1168. To claim the protection of the Fourth Amendment, the claimant must have a legitimate expectation of privacy in the place of intrusion and the expectation must be one that society is prepared to recognize as reasonable. Minnesota v. Olson , 495 U.S. 91, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990) ; State v. Howard, supra . An overnight guest has an expectation of privacy in the home that society is prepared to recognize as reasonable. Id.
La. C. Cr. P. art. 703 states that a defendant may move to suppress any evidence from use at the trial on the merits on the ground that it was unconstitutionally obtained. When the constitutionality of a warrantless search or seizure is placed at issue by a motion to suppress the evidence, the state bears the burden of proving that the search and seizure were justified pursuant to one of the exceptions to the warrant requirement. La. C. Cr. P. art. 703(D) ; State v. Johnson , 32,384 (La. App. 2 Cir. 9/22/99), 748 So.2d 31.
In reviewing a trial court's pretrial ruling on a motion to suppress, the appellate court must look at the totality of the evidence presented at the hearing on the motion to suppress and may review the entire record, including testimony at trial. State v. Howard, supra ; State v. Monroe , 49,365 (La. App. 2 Cir. 11/19/14), 152 So.3d 1011. When the defendant files a motion to suppress evidence that was obtained without a warrant, the state has the burden of proving that the evidence was lawfully seized. La. C. Cr. P. art. 703(D).
Great weight is given to the trial court's ruling on a motion to suppress in regard to the finding of facts because it had the opportunity to observe the witnesses and weigh the credibility of their testimony. State v. Crews , 28,153 (La. App. 2 Cir. 5/8/96), 674 So.2d 1082. Accordingly, this court reviews the district court's ruling on a motion to suppress under the manifest error standard for factual determinations, while applying a de novo review to its findings of law. State v. Hemphill , 41,526 (La. App. 2 Cir. 11/17/06), 942 So.2d 1263, writ denied , 06-2976 (La. 3/9/07), 949 So.2d 441.
Exceptions to the search warrant rule
In general, the Fourth Amendment prohibits the police from entering a private residence without a warrant. However, the existence of exigent circumstances is among the recognized exceptions to the general warrant requirement *678 under the Fourth Amendment; thus, a warrant is not required for a search under the Fourth Amendment when exigent circumstances exist. Payton v. New York , 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980) ; State v. Hemphill, supra . Absent exigent circumstances, a warrantless entry into a home to search for weapons or contraband is unconstitutional even when a felony has been committed and there is probable cause to believe that incriminating evidence will be found within. Groh v. Ramirez , 540 U.S. 551, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004). On the other hand, exigent circumstances justify a warrantless entry, search, or seizure when "police officers, acting on probable cause and in good faith, reasonably believe from the totality of the circumstances that (a) evidence or contraband will imminently be destroyed or (b) the nature of the crime or character of the suspect(s) pose a risk of danger to the arresting officers or third persons." State v. Warren, 2005-2248 (La. 2/22/07), 949 So.2d 1215 ; United States v. Kunkler , 679 F.2d 187 (9th Cir.1982).
Whether exigent circumstances exist is largely a factual question; thus, our review of a district court's finding of exigent circumstances based on specific findings of fact is subject to the manifest error standard of review. When reviewing the trial court's ruling on a motion to suppress, the appellate court may review the entire record, including testimony at trial. State v. Howard , supra ; State v. Monroe , supra .
Hearsay rules do not apply in hearings on motions to suppress evidence. La. C.E. 1101(B)(4) ; State v. Shirley , 08-2106 (La. 5/5/09), 10 So.3d 224. In State v. Shirley , the defendant driver ran a stop sign and flipped her vehicle, resulting in the death of a passenger. The driver was charged with vehicular homicide. Prior to trial the defendant filed a motion to suppress, seeking to exclude statements she made to the officer attending the accident scene which indicated she was driving while intoxicated. However, at the hearing on the motion, the state did not call the officer who heard the defendant's inculpatory statements. Rather, it called the chief of police, who testified based on his knowledge of the report written by the non-testifying officer who heard the defendant's statements. After hearing the testimony, the trial court granted the defendant's motion to suppress, noting that the state failed to produce testimony from the officer who actually heard the statements of the defendant and wrote the report. The Louisiana Supreme Court granted the state's writ application in part, stating:
[W]e find the trial court erred when it failed to consider [the testifying officer's] testimony which was drawn, at least in part, from [another, non-testifying, officer's] written accident report. When the trial court considered whether the defendant was under arrest or detained when she made her statement to [the non-testifying officer] and whether her statement that she consumed alcoholic beverages was admissible, it should have taken into consideration [the testifying officer's] testimony, including the portion drawn from the [non-testifying officer's] police report, when it ruled on the defendant's motion to suppress.
Id. at 229.
It is also well settled that a warrantless search conducted pursuant to a valid consent is permitted by the Louisiana and U.S. Constitutions. Schneckloth v. Bustamonte , 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) ; State v. Raheem , 464 So.2d 293 (La. 1985). To be valid, consent must be (1) free and voluntary, in circumstances that indicate the consent was not the product of coercion, threat, promise, pressure, or duress that would negate the voluntariness; and (2) given by *679 someone with apparent authority to grant consent, such that the police officer reasonably believes the person has the authority to grant and consent to the search. United States v. Matlock , 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974) ; State v. Howard , supra .
Additionally, a valid consent rehabilitates a prior warrantless search. State v. Bennett , 383 So.2d 1236 (La. 1979) ; State v. Williams , 353 So.2d 1299, 1304 (La. 1977), cert. denied , 437 U.S. 907, 98 S.Ct. 3098, 57 L.Ed.2d 1138 ; State v. Taylor , 550 So.2d 712, 718 (La. App. 2 Cir. 1989), writ denied , 556 So.2d 54 (La. 1990). But if consent was obtained after an illegal detention, intrusion or entry, the consent is valid only if it was the product of a free will and not the result of an exploitation of the previous illegality. Among the factors to consider in determining whether the consent was sufficiently attenuated from the unlawful conduct to be a product of a free will are whether the police officers adequately informed the individual that he need not comply with the request, the temporal proximity of the illegality and the consent, the presence of intervening circumstances and, particularly, the purpose and flagrancy of the official misconduct. State v. Taylor , supra ; State v. Summers , 440 So.2d 911 (La. App. 2 Cir. 1983).
Exclusionary Rule
If evidence is derived from an unreasonable search or seizure, the proper remedy is exclusion of the evidence from trial. State v. Benjamin , 97-3065 (La. 12/1/98), 722 So.2d 988. In State v. Brock , 47,005 (La. App. 2 Cir. 3/7/12), 91 So.3d 1003, writ denied , 12-0784 (La. 9/28/12), 98 So.3d 826, this court stated that the exclusionary rule is designed to safeguard Fourth Amendment rights generally through its deterrent effect, citing Herring v. United States , 555 U.S. 135, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009).
After review, we conclude that this record demonstrates that sufficient probable cause and exigent circumstances existed to justify the Shreveport Police Department's warrantless entry of the house at 2761 Rosemont. As previously stated, the only evidence the state offered at the motion to suppress hearing was Det. Coffey's preliminary examination testimony. Although she did not arrive on the scene until after the house was searched and Bates was arrested, Det. Coffey based her testimony on the reports written by her fellow officers at the scene to establish the facts of the case, noting that Cpl. Mendels wrote a lengthy report on the incident. Det. Coffey testified that Brooks's statement to those officers reasonably led them to believe that there was an active shooter at 2761 Rosemont and a warrantless search was necessary to prevent a violent confrontation that may endanger the lives of the officers and any civilians within the residence. Further, upon arriving at 2761 Rosemont, the officers immediately encountered a severely injured Davis, giving rise to the officers' belief that there may be additional injured parties in the house or a risk of further violence. Based on the information available to the officers at the time, we conclude that both probable cause and exigent circumstances existed to justify a warrantless entry and search of 2761 Rosemont.
No testimony was adduced at the hearing on the motion to suppress, and both sides agreed to rely on the testimony at the preliminary examination, which was taken up before the motion to suppress was filed. This somewhat explains why the state did not subpoena the officers who first arrived at the scene and conducted the initial warrantless search of the residence under exigent circumstances. Under *680 State v. Shirley, supra , Det. Coffey's hearsay testimony regarding the exigent circumstances that existed at the time of the search was admissible since it was based on details from the officers' reports. The trial court properly relied on Det. Coffey's testimony in addition to the sections of the report referred to by Det. Coffey when it ruled on Bates's motion to suppress.
We also reject Bates's argument that, because Scroggins was outside when the search uncovered Bates, there were no extant exigent circumstances to continue a warrantless search of the house. In fact, Scroggins and Bates were in the house when police made the warrantless entry and began to secure the premises. Scroggins was one of the persons in the group that police eventually moved outside to the driveway and who were detained by Officer Baurichter of the SPD. Scroggins was subsequently arrested when he attempted to walk away from the house. Meanwhile, as police continued to search and secure the premises, Bates was discovered wrapped up in the comforter on an ottoman. This occurred after Scroggins and the others had moved outside.
Given the totality of the circumstances, we find no merit in Bates's argument. Considering that one person was severely injured on the premises and there were reportedly guns in the home, one of which was allegedly used in the shooting, it would be unreasonable to expect the police to discontinue their search of the house for any stragglers who might pose a danger to them.
Additionally, the after-the-fact consent granted by the homeowner, the validity of which is not challenged by Bates, rehabilitates any prior unlawful searches. At the preliminary examination, Det. Coffey stated that she obtained the homeowner's consent to search the residence, which is corroborated by a written consent form that informed the owner of her right to refuse and stop the search at any point and that items may be seized as a result of the search. Therefore, even if this court were to find that the warrantless search was not based on exigent circumstances and probable cause, suppression of the gun found in Bates's possession as he slept in the residence is unnecessary due to the homeowner's subsequent free and voluntary consent.
Accordingly, we find no error or abuse of discretion by the trial court denying Bates's motion to suppress. This assignment is without merit.
Error Patent Review
Review of the record reveals that Bates's sentence is illegally lenient because the trial court did not impose the mandatory fine of $500-$2,500, as required by La. R.S. 14:95.1(B). The statute provides:
Notwithstanding the provisions of La. R.S. 14:27, whoever is found guilty of attempting to violate the provisions of this Section shall be imprisoned at hard labor for not more than seven and one-half years and fined not less than five hundred dollars nor more than two thousand five hundred dollars.
The trial court sentenced Bates pursuant to the plea agreement, which failed to include the mandatory fine. Neither Bates nor the state raised the illegal lenience of the sentence and Bates is not prejudiced in any way by the failure to impose the mandatory fine.
Although La. C. Cr. P. art. 882(A) provides that an illegally lenient sentence may be corrected at any time by an appellate court on review, this court is not required to take such action. State v. Young , 46,575 (La. App. 2 Cir. 9/21/11), 73 So.3d 473, writ denied , 11-2304 (La. 3/9/12), 84 So.3d 550 ;
*681 State v. Jamerson , 43,822 (La. App. 2 Cir. 1/14/09), 1 So.3d 827 ; State v. Griffin , 41,946 (La. App. 2 Cir. 5/2/07), 956 So.2d 199.
Considering Bates's indigent status and that he was sentenced in accordance with his plea agreement, we decline to impose such a fine at this time and affirm the sentence imposed.
CONCLUSION
For the foregoing reasons, we affirm Bates's conviction and sentence.
AFFIRMED.