Judgment rendered September 21, 2022.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 54,740-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                      Appellee

versus

JAMES CODY MCMAHON                      Appellant

* * * * *

Appealed from the
Fourth Judicial District Court for the
Parish of Ouachita, Louisiana
Trial Court No. 19-CR4712

Honorable Hamilton Stephens Winters, Judge

* * * * *

LOUISIANA APPELLATE PROJECT          Counsel for Appellant
By: Edward Kelly Bauman

ROBERT STEPHEN TEW                   Counsel for Appellee
District Attorney

JUSTIN A. WOOLEY
Assistant District Attorney

* * * * *

Before MOORE, PITMAN, and COX, JJ.

**COX, J.**

This case arises out of the Fourth Judicial District Court, Ouachita Parish, Louisiana. James Cody McMahon was charged and unanimously convicted in violation of La. R.S. 14:91.5, unlawful use of a social networking site. McMahon appealed, and this Court vacated his sentence and remanded for resentencing. On remand, McMahon was sentenced to his original sentence of three years at hard labor without probation, parole, or suspension of sentence. He now argues La. R.S. 14:91.5 is unconstitutional and his Fourth and Fourteenth Amendment rights were violated. For the following reasons, we affirm.

## FACTS

McMahon was charged by amended bill of information of one count of unlawful use of a social networking site in violation of La. R.S. 14:91.5. At the time of his charge, he was on supervised probation for an indecent behavior with a juvenile conviction. During a visit with his probation officer, Amanda Peoples, he was asked to submit to a random drug test. Before the drug test, he was asked to submit his cell phone for a search. Officers found applications for Facebook, Snapchat, Twitter, and Instagram on his cell phone. Officers then requested a search warrant to search McMahon's phone, including social media accounts, emails, and chats on any social media accounts.

On February 10, 2020, McMahon filed a motion to suppress prior to the start of *voir dire*. He argued his phone "was seized and searched without a warrant and without probable cause or reasonable suspicion in violation of the Fourth Amendment" and his consent to search the phone was coerced. The parties agreed that the motion would be heard on the merits.

During trial, Deputy Peoples testified that as a condition of McMahon's probation, he could not have social media accounts. She stated that she reminded him of this when she would visit his home but did not personally review this condition with him in 2016 when he was convicted.

Deputy Peoples testified that on August 6, 2019, she decided to give McMahon a random drug screen. She stated that when he was going through the metal detector, he had to place his cell phone on the counter. She testified that when he set his cell phone down, she told him she would like to look at it. She stated that she asked him if there was anything on it he was not supposed to have, he said no, and she had him unlock the passcode on the cell phone. She stated that he did not hesitate to put the passcode into the phone.

Deputy Peoples testified that after McMahon typed the passcode, he handed her his cell phone, she looked at the phone, and it was "quite obvious" that he had Facebook and Snapchat icons. She testified that when she asked McMahon if he knew he was not supposed to have social media accounts, he said he did know that.

Deputy Stacy Morrison testified that she is in charge of sex offender registrations for Ouachita Parish. She stated that individuals who come through her office are required to fill out a sex offender contract, which outlines rules and prohibits the use of social media. She stated that when an offender first comes to her office, she explains the rules. Deputy Morrison was shown a copy of McMahon's sex offender contract and verified that he initialed the bottom of every page, signifying that he understood all the rules.

Officer Corey Bennett testified that he is a supervisor for probation and parole for the State of Louisiana. He stated that he originally set up McMahon's case in 2016 and supervised him from May of 2017 until sometime in 2019. He testified that he reviewed the rules of probation with McMahon. He stated that the rules include a prohibition on social media use and provide for an inspection of computers and electronic devices. He testified that in sex offender cases, cell phones are randomly checked. Officer Bennett stated that McMahon could have refused the search and put his cell phone in his vehicle.

On February 11, 2020, while the jury deliberated, the trial court denied McMahon's motion to suppress. McMahon was found guilty by a unanimous jury of unlawful use of a social networking site. He was sentenced to three years at hard labor. McMahon appealed. His sentence was vacated, and his case was remanded on July 21, 2021.[1] In that per curiam opinion, McMahon's sentence was vacated and the matter remanded for further proceedings because the trial court failed to rule on his motion for post-verdict judgment of acquittal and motion in arrest of judgment prior to sentencing. On July 28, 2021, the trial court held a hearing to correct the minutes. The trial court stated that McMahon's motion for post-verdict judgment of acquittal and motion in arrest of judgment had been ruled on. The trial court supplemented the record with transcripts of the sentencing where both motions were addressed and ordered the minutes be corrected to reflect the disposition of the motions.

---

[1] *State v. McMahon*, 54,172, (La. App. 2 Cir. 7/21/21) 2021 WL 3073069.

3

McMahon's resentencing hearing was held on December 30, 2021. At that hearing, the trial court discussed the remand from this Court. The trial court stated and defense counsel agreed that the motions had been ruled upon or waived at the prior sentencing. McMahon agreed on the record that his motion for post-verdict judgment of acquittal had been ruled upon. He then waived his motion in arrest of judgment and motion for new trial. McMahon stated he believed these motions were taken care of prior to his original sentencing. The trial court sentenced McMahon to his original sentence of three years. McMahon now appeals.

## DISCUSSION

*Constitutionality of La. R.S. 14:91.5*

McMahon argues that the trial court erred in denying his *pro se* motion in arrest of judgment and in ruling La. R.S. 14:91.5 is constitutional. He points out that in *Packingham v. North Carolina*, -- U.S. --, 137 S. Ct. 1730, 198 L. Ed. 2d 273 (2017), the Supreme Court held that a similar North Carolina statute was unconstitutional.

McMahon argues that La. R.S. 14:91.5 is unconstitutional because it infringes on his First Amendment right to freedom of speech. He asserts that an absolute restriction on his internet access may derail his chances of seeking gainful employment or maintaining networking capabilities to keep employment. He argues that the statute, as written, is not narrowly written to prevent illicit communications between sex offenders and minors but is a blanket restriction on First Amendment rights. He requests the trial court be reversed and La. R.S. 14:91.5 be declared unconstitutional.

The State argues that the trial court was correct in its ruling regarding the constitutionality of La. R.S. 14:91.5. It argues that the Louisiana statute

4

is not a broad statute like the statute discussed in *Packingham v. North Carolina, supra*, which had broad language to not only bar social media sites but also websites like Amazon and Webmd. Additionally, Louisiana's statute applies onlyto those who are required to register as a sex offender. For these reasons, the State asserts that Louisiana's statute can be distinguished from the North Carolina statute.

Legislation is deemed a solemn expression of legislative will. La. C.C. art. 2. Statutes are presumed to be constitutional and their constitutionality will be preserved when it is reasonable to do so. *Pesnell v. Sessions*, 51,871 (La. App. 2 Cir. 2/28/18), 246 So. 3d 686. Since statutes are presumed to be constitutional, "the party challenging the validity of a statute generally has the burden of proving unconstitutionality." *Moore v. RLCC Techs., Inc.*, 95-2621 (La. 2/28/96), 668 So. 2d 1135; *Pesnell v. Sessions, supra*. To satisfy this burden, the challenging party must cite the specific constitutional provision that prohibits the legislative action. *Pesnell v. Sessions, supra*.

In order to survive intermediate scrutiny, a law must be "narrowly tailored to serve a significant governmental interest." In other words, the law must not "burden substantially more speech than is necessary to further the government's legitimate interests." *Packingham v. North Carolina, supra*.

In *Packingham v. North Carolina, supra*, the Supreme Court held that the North Carolina statute impermissibly restricted lawful speech, in

5

violation of the First Amendment. The North Carolina statute provided, in pertinent part:[2]

> (a) Offense.--It is unlawful for a sex offender who is registered in accordance with Article 27A of Chapter 14 of the General Statutes to access a commercial social networking Web site where the sex offender knows that the site permits minor children to become members or to create or maintain personal Web pages on the commercial social networking Web site.
>
> (b) For the purposes of this section, a "commercial social networking Web site" is an Internet Web site that meets all of the following requirements:
>
> (1) Is operated by a person who derives revenue from membership fees, advertising, or other sources related to the operation of the Web site.
>
> (2) Facilitates the social introduction between two or more persons for the purposes of friendship, meeting other persons, or information exchanges.
>
> (3) Allows users to create Web pages or personal profiles that contain information such as the name or nickname of the user, photographs placed on the personal Web page by the user, other personal information about the user, and links to other personal Web pages on the commercial social networking Web site of friends or associates of the user that may be accessed by other users or visitors to the Web site.
>
> (4) Provides users or visitors to the commercial social networking Web site mechanisms to communicate with other users, such as a message board, chat room, electronic mail, or instant messenger.
>
> (c) A commercial social networking Web site does not include an Internet Web site that either:
>
> (1) Provides only one of the following discrete services: photo-sharing, electronic mail, instant messenger, or chat room or message board platform; or
>
> (2) Has as its primary purpose the facilitation of commercial transactions involving goods or services between its members or visitors.

---

[2] N.C.G.S. § 14-202.5.

The prior version of La. R.S. 14:91.5 was held to be unconstitutional by a federal district court in February 2012,[3] and the statute was revised in August 2012. The current version of the statute provides, in pertinent part:

A. The following shall constitute unlawful use of a social networking website:

(1) The intentional use of a social networking website by a person who is required to register as a sex offender and who was convicted of R.S. 14:81 (indecent behavior with juveniles), R.S. 14:81.1 (pornography involving juveniles), R.S. 14:81.3 (computer-aided solicitation of a minor), or R.S. 14:283 (video voyeurism) or was convicted of a sex offense as defined in R.S. 15:541 in which the victim of the sex offense was a minor.

(2) The provisions of this Section shall also apply to any person convicted for an offense under the laws of another state, or military, territorial, foreign, tribal, or federal law which is equivalent to the offenses provided for in Paragraph (1) of this Subsection, unless the tribal court or foreign conviction was not obtained with sufficient safeguards for fundamental fairness and due process for the accused as provided by the federal guidelines adopted pursuant to the Adam Walsh Child Protection and Safety Act of 2006.1

B. For purposes of this Section:

(1) "Minor" means a person under the age of eighteen years.

(2)(a) "Social networking website" means an Internet website, the primary purpose of which is facilitating social interaction with other users of the website and has all of the following capabilities:

(i) Allows users to create web pages or profiles about themselves that are available to the general public or to any other users.

(ii) Offers a mechanism for communication among users.

(b) "Social networking website" shall not include any of the following:

(i) An Internet website that provides only one of the following services: photo-sharing, electronic mail, or instant messaging.

---

[3] *Doe v. Jindal*, 853 F. Supp. 2d 596 (M.D. La. 2012).

(ii) An Internet website the primary purpose of which is the facilitation of commercial transactions involving goods or services between its members or visitors.

(iii) An Internet website the primary purpose of which is the dissemination of news.

(iv) An Internet website of a governmental entity.

(3) "Use" shall mean to create a profile on a social networking website or to contact or attempt to contact other users of the social networking website.

The Supreme Court stated in *Packingham v. North Carolina, supra*, "[T]his opinion should not be interpreted as barring a State from enacting more specific laws than the one at issue. Specific criminal acts are not protected speech even if speech is the means for their commission." We find the current Louisiana statute to be more narrowly tailored than the unconstitutional North Carolina statute.

A comparison of the Louisiana and North Carolina statutes reveals that Louisiana's statute is directed toward a narrower group of registered sex offenders. North Carolina's statute applied to *all* registered sex offenders under its "Sex Offender and Public Protection Registration Programs." *See* N.C.G.S. § 14-208.5, *et seq.* Louisiana's statute applies to those required to register as a sex offender *and* have been convicted of certain enumerated crimes. La. R.S. 15:542 governs which offenses require sex offender registration for both adults and juveniles and states, in pertinent part:

(1) Any adult residing in this state who has pled guilty to, has been convicted of, or where adjudication has been deferred or withheld for the perpetration or attempted perpetration of, or any conspiracy to commit either of the following:

(a) A sex offense as defined in R.S. 15:541, with the exception of those convicted of felony carnal knowledge of a juvenile as provided in Subsection F of this Section.

8

(b) A criminal offense against a victim who is a minor as defined in R.S. 15:541.

There are over 25 offenses listed as sex offenses in La. R.S. 15:541(24) and over 10 offenses listed as criminal offenses against a minor victim in La. R.S. 15:541(12).[4] All of these offenses require the offender to register. However, La. R.S. 14:91.5 applies only to those registered sex offenders who are convicted of R.S. 14:81 (indecent behavior with juveniles), R.S. 14:81.1 (pornography involving juveniles), R.S. 14:81.3 (computer-aided solicitation of a minor), R.S. 14:283 (video voyeurism), or a sex offense as defined in R.S. 15:541 in which the victim of the sex offense was a minor. This list of required convictions has the effect of narrowing the statute so that the prohibition on social networking sites does not apply to every registered sex offender as the North Carolina statute did. By tailoring the statute, the Louisiana legislature has targeted those offenders who "often pose a high risk of engaging in … crimes against victims who are minors even after being released from incarceration" which is "of paramount governmental interest." La. R.S. 15:540(A).

The Louisiana and North Carolina statutes have additional distinctions. Louisiana has two additional exclusions to the definition of social networking website: "An Internet website the primary purpose of which is the dissemination of news"; and "An Internet website of a governmental entity." The North Carolina statute prevented *access* to social networking websites. The Louisiana statute is distinguishable from the North Carolina statute because it does not prevent access to social

---

[4] Only those offenses which require an adult to register as a sex offender are discussed in this opinion. This list is not meant to encompass all possibilities of registration but is used for illustrative purposes.

networking websites, it only prevents *use* of the websites. "Use" is defined in the Louisiana statute as "to create a profile on a social networking website or to contact or attempt to contact other users of the social networking website."

These distinctions between the two statutes speak directly to the concerns of the Supreme Court that offenders would not have access to sources for current events, checking employment ads, and "exploring the vast realms of human thought and knowledge." *Packingham v. North Carolina, supra*. The Louisiana statute specifically allows accounts to be created on news and government websites. It also allows access to any website; it simply prevents a personal account from being created, which prevents contact with minors. For example, registered sex offenders can still access public social media pages to view announcements, news, and job postings.

For these reasons, we find that La. R.S. 14:91.5 does not violate the First Amendment rights of those registered sex offenders who are prevented from using social networking sites. This assignment of error lacks merit.

*Attorney General not properly served*

McMahon argues the Louisiana Attorney General ("AG") was not sufficiently notified via service of process that he made a constitutional challenge to La. R.S. 14:91.5. He asserts that there is no record of the AG being served. He therefore argues, according to *State v. Broussard*, 18-0616 (La. App. 1 Cir. 12/21/18), 268 So. 3d 307, the trial court's ruling on the constitutionality of La. R.S. 14:91.5 should be vacated and remanded for a new trial in which the AG has an opportunity to participate.

10

The State asserts that the AG was adequately served but chose not to respond. It argues that AG service via certified mail is only required of the courts of appeal and Louisiana Supreme Court, but it is not required of trial courts. It notes that the AG is required to be served, but the method of service is not specified.

If the statute, ordinance, or franchise is alleged to be unconstitutional, the attorney general of the state shall also be served with a copy of the proceeding and be entitled to be heard. La. C.C.P. art. 1880. "Prior to adjudicating the constitutionality of a statute of the state of Louisiana, the *courts of appeal and the Supreme Court of Louisiana* shall notify the attorney general of the proceeding and afford him an opportunity to be heard. The notice shall be made by certified mail." La. R.S. 13:4448 (emphasis added).

The record reveals that the AG was served via domiciliary service on July 9, 2020. La. R.S. 13:4448 requires service via certified mail by the courts of appeal and Supreme Court. There is no requirement that the trial court serve the AG by a particular method. Therefore, the domiciliary service of the AG is compliant with La. C.C.P. art. 1880. This assignment of error lacks merit.

*Unreasonable search and seizure*

McMahon argues the trial court erred in denying his motion to suppress. He argues he was deprived of his right to be free from unreasonable searches and seizures, as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution and Article 1, Section 5 of the Louisiana Constitution of 1974. He asserts that his rights were violated when his probation officer searched his cell phone without

11

reasonable suspicion. McMahon asserts that typing in his passcode and handing the phone to his probation officer was not voluntary consent to search his phone. He argues that the probation form, which allows for the search of electronics and he signed, attempts to trump the conditions of his probation judgment and La. C. Cr. P. art. 895(A)(13)(b).[5] For these reasons, he requests this Court reverse the trial court's ruling denying the motion to suppress and remand for further proceedings.

The State argues the trial court was correct in denying McMahon's motion to suppress. The State highlights the trial court's finding that McMahon gave consent to search the phone; therefore, a warrant was not required. The State requests this Court affirm the trial court.

When the defendant files a motion to suppress evidence that was obtained without a warrant, the State has the burden of proving that the evidence was lawfully seized. La. C. Cr. P. art. 703(D). Great weight is given to the trial court's ruling on a motion to suppress in regard to the finding of facts because it had the opportunity to observe the witnesses and weigh the credibility of their testimony. Accordingly, this Court reviews the district court's ruling on a motion to suppress under the manifest error standard for factual determinations, while applying a *de novo* review to its findings of law. *State v. Bates*, 51,890 (La. App. 2 Cir. 2/28/18), 246 So. 3d 672.

---

[5] For those persons who have been convicted of a "sex offense" as defined in R.S. 15:541, [the defendant shall] agree to searches of his person, his property, his place of residence, his vehicle, or his personal effects, or any or all of them, at any time, by a law enforcement officer, duly commissioned in the parish or municipality where the sex offender resides or is domiciled, designated by his agency to supervise sex offenders, with or without a warrant of arrest or with or without a search warrant, when the officer has reasonable suspicion to believe that the person who is on probation is engaged in or has been engaged in criminal activity for which the person has not been charged or arrested while on probation. La. C. Cr. P. art. 895(A)(13)(b).

The Fourth Amendment to the United States Constitution and Article 1, Section 5, of the Louisiana Constitution protect people against unreasonable searches and seizures. It is well settled that a search and seizure conducted without a warrant issued on probable cause is per se unreasonable unless the warrantless search and seizure can be justified by one of the narrowly drawn exceptions to the warrant. *State v. Simmons*, 54,026 (La. App. 2 Cir. 10/6/21), 328 So. 3d 580, *writ denied*, 21-01636 (La. 1/12/22), 330 So. 3d 631; *State v. Bates, supra*.

The prohibition against warrantless searches does not apply to a search that is conducted pursuant to consent. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973); *State v. Hill*, 53,286 (La. App. 2 Cir. 3/4/20), 293 So. 3d 104. To be valid, consent must be (1) free and voluntary, in circumstances that indicate the consent was not the product of coercion, threat, promise, pressure, or duress that would negate the voluntariness; and (2) given by someone with apparent authority to grant consent, such that the police officer reasonably believes the person has the authority to grant consent to search. *State v. Hill, supra.*

Based on the facts of this case, we do not find that the trial court was manifestly erroneous in determining McMahon gave valid consent to search his phone. Deputy Peoples testified that she told McMahon she would like to view his cell phone and asked him to type in the password. She stated that he typed in the passcode and handed her the phone. She testified that he did not hesitate to type in the passcode. McMahon did not present any evidence or testimony to rebut Deputy Peoples' version of events. Additionally, Officer Bennett testified that McMahon could have refused and/or placed his phone back in his vehicle.

13

McMahon failed to show that his consent was not free and voluntary. Additionally, he did not present evidence of coercion, threat, promise, pressure, or duress. By typing in his passcode and handing his phone to Deputy Peoples, McMahon consented to the search of his phone. This assignment of error lacks merit.

## ERROR PATENT

A review of the record indicates McMahon's sentence is not correctly recorded in the minutes as required by La. C. Cr. P. art. 871. When there is a discrepancy between the minutes and the transcript, the transcript prevails. *State v. Lynn*, 52,125 (La. App. 2 Cir. 8/15/18), 251 So. 3d 1262, *writ denied*, 18-1529 (La. 4/15/19), 267 So. 3d 1129. The transcript reveals that at his resentencing hearing, McMahon was sentenced to three years at hard labor without benefit of probation, parole, or suspension of sentence and a fine of $500, which the trial court stated was the same sentence previously imposed. The December 20, 2021, minute entry leaves out a portion of the sentence and provides, "[D]efendant was by the Court sentenced to the originally sentence imposed. Defendant to pay $500.00 or default 30 days without probation, parole or suspension of sentence with credit for time served." Accordingly, we order that the December 20, 2021, minute entry be amended to include that McMahon was sentenced to three years at hard labor.

## CONCLUSION

For the reasons stated above, we affirm McMahon's conviction and sentence. We order that the minutes be corrected to include McMahon's sentence.

**AFFIRMED.**

14